**UNITED STATES DISTRICT COURT – SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

LONE STAR COLLEGE SYSTEM

V.

MICHAEL MOATES

Case No.: _

**NOTICE OF REMOVAL**

United States Courts
Southern District of Texas
FILED

SEP 0 8 2021

Nathan Ochsner, Clerk of Court

Defendant Michael Moates files this NOTICE OF REMOVAL of Plaintiff Lone Star College System's Original Petition filed in the 333rd Judicial District Court of Harris County, Texas, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. Furthermore, it is filed in compliance with LR-81. This court has jurisdiction in this case because the Plaintiff has stated in their petition various facts, causes of action (that lead to this suit) that include the ADA, Section 504, Department of Education – Office of Civil Rights, Department of Justice – Civil Rights Complaints, etc. See Osborn v Bank of the United States.

There are 3 related cases (All regarding the same subject matter):

Pending before the Eastern District of Texas - 4:21-cv-00631

Pending before the State District Court of Harris County – 202155140

Inactive (due to removal) before the State District Court of Denton County - 21-6417-362

**Statement of Facts**

1. On 29 July 2021, the Defendant filed a case in the Denton County District Courts under various claims of state and federal statutes regarding denial of disability accommodations.

2. After avoiding service, the Plaintiffs were finally severed on 5 August, and in the amended complaint on 11 August 2021.

1

3. On 10 August 2021, the Plaintiff (Lone Star College System) removed their case to federal court and represented that other Defendants had not yet been served (Although this was false).

4. On 13 August 2021, they coerced the Defendant into signing an agreement that he did not agree with slowing responding and delaying communication to push the Plaintiff in to a bad position. Furthermore, they refused to withdraw him from the class as requested. Also, when the signature on the agreement was affixed, it was the Defendants belief that the Plaintiff indented to follow the law. They did not and they did not make a good faith effort to communicate to resolve the accommodations issues.

5. On 17 August 2021, the Plaintiff filed a stipulation of dismissal. The signature of the Defendant was contingent on receiving the "final signature" of the executed document from Steven Head. The Plaintiffs without permission choose to file the stipulation of dismissal prior to the Defendant receiving the final signature, therefor it is a forgery and is invalid.

6. The Defendant filed in federal court to set aside the judgement and declare the agreement invalid on 27 August 2021.

7. On 30 August 2021, the Defendants filed a new case in Harris County where they allege a breach of contract.

8. In the petition from page 3-39 the Plaintiff alleges various wrongdoing by the Defendant. All this information is in violation of Rule 45 of TRCP. The rule states that pleadings should a) be by petition and answer; b) Consist of a statement in plain in concise language of the Plaintiffs cause of action or the Defendants grounds of defense. That an allegation be evidentiary or be of legal conclusion shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole; and contain any other matter which may be required by law or rule authorizing or regulating any particular action or defense. A Motion to Strike is forthcoming.

9. In their petition, Lone Star College alleges one cause of action, Breach of Contract. However, they state that "Moates…" "repudiated it." That is simply inaccurate, in fact, the exact opposite took place, the Defendant notified that there was no repudiation.

10. All these claim's stem from Moates' Amended Petition filed in Denton County Courts. A Motion to Consolidate is forthcoming.

Pursuant to Local Rule 81:

Service Executed in the Case (Documents Attached):

Counsel for the Plaintiffs
Stephen J. Quezada
Texas SBN: 24076195
Fed. I.D. 1348753
Gray Reed & McGraw LLP
1300 Post Oak Blvd., Ste. 2000
Houston, Texas 77056
Phone: 713-986-7215
squezada@grayreed.com

Pro Se
Michael Moates
2700 Colorado Boulevard
#1526
Denton, Texas 76210
Phone: 817-999-7534
Email: michaelsmoates@gmail.com

Documents:

Plaintiffs ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER TEMPORARY INJUNCTION AND PERMANENT – EXHIBIT A - UNSERVED

Plaintiffs EXHIBITS A – II - EXHIBIT B - UNSERVED

Plaintiffs Motion for Expedited Discovery - EXHIBIT D - UNSERVED

Plaintiffs Proposed TRO - EXHIBIT E - UNSERVED

Defendants After TRO Hearing Letter - EXHIBIT G

Judge's ORDER GRANTING EXPEDITED DISCOVERY SIGNED - EXHIBIT D

1    Judge's ORDER SIGNED SETTING HEARING - - EXHIBIT I

2    Judge's ORDER SIGNED GRANTING TEMPORARY RESTRAINING ORDER - EXHIBIT J

3    FOR THE REASONS STATED ABOVE THE DEFENDANT REMOVES THE PLAINTIFFS

4
     ORGINAL PETITION TO THE SOUTHERN DISTRICT OF TEXAS.
5

6

7

8                                                        /s/ Michael Moates
9                                                        **Michael Moates**
                                                         **2700 Colorado Boulevard #1526**
10                                                       **Denton, TX 76210**
                                                         **(817) 999-7534**
11                                                       **michaelsmoates@gmail.com**

12   **CERTIFICATE OF SERVICE**
13   This document emailed to Defendant's counsel. **THE PLAINTIFF IS PREVENETED BY A**
     **STATE TRO FROM CONTACTING THE PLAINTIFF. SO, HE HAS SERVED THEIR**
14   **ATTORNEY.**

15                                                       /s/ Michael Moates

16                                                       Michael Moates

17
                                                         2700 Colorado Boulevard #1526
18
19                                                       Denton, TX 76210

20                                                       (817)999-7534

21                                                       michaelsmoates@gmail.com

22

23

24
                          # EXHIBIT A
25

26

27

28

4

United States Courts
Southern District of Texas
**FILED**

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Lone Star College System | Michael Moates        Nathan Ochsner, Clerk of Court |

| (b) County of Residence of First Listed Plaintiff   Harris | County of Residence of First Listed Defendant   Denton |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Gray Reed & McGraw LLP - Stephen J. Quezada 1300 Post Oak Blvd., Suite 2000 Houston, Texas 77056 | Pro Se |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for:

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☒ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |   ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 12133; 42 U.S.C. § 12182(a); Section 504 Rehabilitation Act

Brief description of cause:
3 Cases All Same Subject Matter - Failure to Accommodate Disability, Removal to Eastern District of Texas, Breach of Contract Harris County

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Sean D. Jordan (ED-TX), BRITTANY MORRIS   DOCKET NUMBER 4:21-cv-00631, 202155140 (Harris)

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 3 Sept 2021 | /S/ Michael Moates, Pro Se |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

Cause No. _____

| | | |
|---|---|---|
| LONE STAR COLLEGE | § | |
| SYSTEM DISTRICT, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| MICHAEL S. MOATES, | § | |
| | § | |
| *Defendant.* | § | _____ JUDICIAL DISTRICT |

---

### Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction

---

Plaintiff Lone Star College System District files this Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against Defendant Michael S. Moates, and shows the Court as follows:

This is a breach of contract case. Michael S. Moates is a former student of Lone Star College System District. Lone Star College is a public junior college and political subdivision of the State of Texas. This suit arises from two biology courses (Nutrition and Anatomy & Physiology) that Moates took in the summer of 2021, a lawsuit Moates filed claiming disability discrimination, and the agreement reached by Moates and Lone Star College to resolve Moates' discrimination lawsuit. Moates' lawsuit claimed disability discrimination with regard to the Anatomy & Physiology course, in which Moates was performing poorly. Lone Star College decided to reach an agreement with Moates to resolve the dispute. The agreement further required Moates to enter into a supplemental agreement and release of claims after he completed the Nutrition course—no matter the outcome. But because Moates is displeased with the grade he received in the course, he refuses to live up to his end of the bargain. Instead, Moates has taken to the internet and email to threaten, berate, and taunt Lone Star College's employees, trustees, and counsel.

## I.     The Parties

1.     Plaintiff Lone Star College System District is a public junior college and political subdivision of the State of Texas.

2.     Defendant is an individual living in Texas. He can be served at 2700 Colorado Boulevard #1526, Denton, TX 76210 or wherever he may be found.

## II.     Jurisdiction and Venue

3.     This Court has jurisdiction over this matter because the damages and relief sought by Lone Star College are within the jurisdictional limits of the Court.

4.     Venue is proper because Harris County is the venue agreed to by Moates and Lone Star College in the agreement at issue.

## III.     Statement Regarding Damages

5.     Pursuant to TRCP 47(c)(2), Lone Star College seeks monetary relief of $250,000 or less and non-monetary relief in the form of temporary and permanent injunctive relief.

## IV.     Discovery

6.     Lone Star College intends to conduct discovery under Level 3 pursuant to TRCP 190.4 and affirmatively pleads that this suit is not governed by the expedited actions process in TRCP 169 because it seeks temporary and permanent injunctive relief.

### V.      Factual Background

**A.  "Michael Moates, MA, QMHP-T, RBT, CPI."**

7.      The Daily Beast described Moates as a "24-year-old sometimes-journalist and occasional peddler of the QAnon conspiracy theory" and noted that his having been "accused of sending inappropriate texts to teenagers."[1]

8.      Moates has minted himself as a journalist and claims an affiliation with the following outlets: (1) Executive Director of the Narrative Times;[2] (2) blogger for The Washington Examiner;[3] (3) the Executive Director of the DC Chronicle;[4] (4) published with The Dallas Morning News;[5] (5) published with Buzzfeed;[6] (6) published by the Denton Record Chronicle;[7] (7) published with the Daily KOS;[8] (8) published with the Independent Journal Review;[9] and (9) published with The Blaze.[10]

---

[1] The Daily Beast, *Teen-Texting QAnon Creep Quits Campaign*, Kelly Weil, *available at* https://www.thedailybeast.com/michael-moates-qanon-guy-accused-of-inappropriately-texting-teens-quits-campaign (last accessed August 28, 2021).

[2] *See* The Washington Examiner, *This White House proposal will have you saying 'Aww'*, Michael Moates, *available at* https://www.washingtonexaminer.com/this-white-house-proposal-will-have-you-saying-aww (last accessed August 27, 2021).

[3] *Id.*

[4] Michael Moates LinkedIn Profile Page, *available at* https://www.linkedin.com/in/michaelsmoates/, (last accessed August 27, 2021).

[5] Michael Moates CV, *available at* https://michaelmoates.academia.edu/cv (last accessed August 27, 2021).

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

9. The Narrative Times does not appear to exist:



10. Moates' blogs for the Washington Examiner include:[11]



---

[11] See Washington Examiner, *available at* https://www.washingtonexaminer.com/author/michael-moates (last accessed August 30, 2021).

11.    Moates' publication in the Dallas Morning News is a letter to editor:[12]



**Why I support Marilyn Tolbert**

The Eagle Mountain-Saginaw Independent School District will hold elections Saturday for its board members. Marilyn Tolbert has served our district proud for three years. It is unfortunate that members of the community are unable to find much information on the other candidate, Ron Franklin. His Facebook page doesn't list a website and offers no insight into his plans for the school district.

Tolbert, his opponent, is very active within our community. She graduated in 2010 from Texas Christian University with a doctorate in education. Beyond advocating for the entire community, she has an interest in advocating for special education. She seeks reelection after a tough year serving during the pandemic. In addition to serving on the school board, she serves as on the board of the Eagle Mountain-Saginaw Education Foundation.

*Michael Moates, Saginaw*

12.    The DC Chronicle appears to no longer exist. It also appears to have published an article on it entitled "Senate Candidate Kelli Ward Linked to Swinger Sending Unsolicited Penis Pictures to Women Online." Moates purport to have worked on Kelli Ward's campaign for Senate.

---

[12] The Dallas Morning News, available at https://www.dallasnews.com/opinion/letters-to-the-editor/2021/04/30/letters-to-the-editor-corporate-taxes-covid-19-and-healthcare-workers-texas-rangers-eagle-mountain-saginaw-isd-parking-backwards/ (last accessed August 30, 2021).



13.    A Google search reveals nothing published by Moates on The Blaze, but does reveal that The Blaze sought to rebut his claims of an association with it:





14.     The Daily Kos, who Moates claims to be affiliated with, says that Moates is "kinda the worst." The Daily Kos published an article about him titled, "A brief diversion from serious stuff, to talk about an a-hole conservative"[13] in which it notes that Moates claimed affiliation with the site is a "bullshit lie":



# A brief diversion from serious stuff, to talk about an a-hole conservative

**kos**
Daily Kos Staff

Sunday March 22, 2020   12:44 PM CDT

★ Recommend  254      **f** Share      **Tweet**                              83 Comments

**Michael Moates - TX 26 Candidate**
@Liberty26

Candidate running to represent the people of Denton County in House District 26.
Don't Mess With TX Donate Here: bit.ly/2IhCVEd

⊙ Denton, Texas   ⊘ michaelmoates.com   📅 Joined December 2019

**2,199** Following    **872** Followers

Not followed by anyone you're following

📶 RSS                    Meet Michael Moates. He's kinda the worst.

PUBLISHED TO         Normally, you'd say, "what's so special about yet another Qanon-style
                     conservative down in Texas? They're a dime a dozen!" And sure, you'd be right. But
kos                  Moates has decided to stand out from the pack, to get himself a healthy dose of the
                     Streisand Effect. So okay, here goes.
Daily Kos

---

[13] The Daily Kos, *available at* https://www.dailykos.com/stories/2020/3/22/1929988/-A-brief-diversion-from-serious-stuff-to-talk-about-an-a-hole-conservative (last accessed August 30, 2021).

It all started when community member republicinstanity posted this story:
"Crazy/Stupid Republican of the Day: Michael Moates."

> [W]e'll be discussing **Michael Moates**, a 2020 candidate for U.S. House
> of Representatives in Texas' 26th Congressional District who is more
> renowned for being a conservative troll who does his best to promote
> the Qanon Conspiracy Theory (the one that insists opponents of
> Donald Trump are Satan-worshipping, child-molesting cannibals), and
> has been given temporary bans from Twitter for encouraging Donald
> Trump to order ICE to shoot at migrants crossing the border on sight.

The story originally had a picture of Moates culled from his social media, and he
decided to file a complaint with our hosting service, attempting to shut down the site.
(The story's writer replaced image with an equally appropriate one: a trash dumpster.)

We handled it, sure, but then it made me curious. Who is this asshole, trying to censor
people's discussions about him? Under any possible theory of the copyright law, the
image was fair game—we are a political discussion site, he was a candidate for the U.S.
House of Representatives, affording the highest Fair Use protections for the image.
Why was he going to such lengths to try and hide his face?

For starters, there's the QAnon stuff linked above. "The conspiracy theory these media
figures have adopted is known online as "The Storm" and is essentially a radical spin-
off of the already byzantine "Pizzagate" conspiracy theory, which alleges the world's top
politicians, financiers and entertainers operate a secret satanic pedophile ring that
traffics young children to be sexually abused and sacrificed," wrote Jared Holt for Right
Wing Watch. "The Storm, which since its inception has more frequently been referred
to as the "QAnon" theory, takes Pizzagate a step further by alleging that Special
Counsel Robert Mueller's investigation into potential collusion between Russian
officials and the Trump 2016 campaign is actually cover for Trump's work dismantling
the supposed pedophile ring and inching closer toward imprisoning Democrats like
Hillary Clinton for their alleged involvement."

But it wasn't until *this* moment that he stood out from the pack:



Calling Alexandria Ocasio-Cortez a "bitch"—a favorite pastime of misogynists everywhere unable to handle a strong woman—catapulted him into infamy. Conservatives loved him! Look at all those likes! But it also focused greater attention on him. And what people found was, er, kinda gross.

For example, his creeping on women and underage girls, as extensively documented by Right Wing Watch. We'll start with a rare case: a woman of legal age (a college student).






maybe if I get you drinking I can get that date

Sounds bad

Sounds like a reason parents give daughters pepper spray

LOL I would never take advantage lol more of hey your cute youve been drinking lets go to dinner haha

♡ 1   8:48 AM · Oct 10, 2018

While discussing this exchange on a podcast, Moates decided to blame the woman, because of course he did:

Moates admitted to Higbie on the podcast that the message about alcohol may have been phrased poorly, but said that because the young woman to whom he sent that message had reportedly experienced multiple instances of sexual harassment at her college, her interpretation of his messages "speaks to her state of mind."

"If you have a history of this, maybe you're the one who's overreacting," Moates said on the podcast.

As noted, that one was an anomaly. His targets usually trend much younger.

There's the story of 16-year-old anti-abortion activist, Purity Thomas, who first approached Moates (who styled himself a journalist, and even made it into the White House briefing room at least once), wanting to tell a story about being punched by pro-choice activists outside an abortion clinic. Sensing opportunity, Moates pounced.

> Thomas texted Moates more details about her incident, writing that it had happened the year before, when she was 15 years old, to which he replied: "hey crazy beautiful chick." Thomas took offense. In following messages, Moates would try to joke that he had mistaken Thomas' first name, Purity, as "purdy," a slang term reflecting a southern dialect saying the word "pretty."
>
> "After that, I thought, 'You're not coming anywhere near my team,'" Thomas told Right Wing Watch.
>
> After Thomas came forward about her interactions with him, Moates defended his remarks during a September 5 podcast, saying, "Yes, she was beautiful."
>
> "She never sent me a text message saying that it bothered her," Moates told Higbie. "If anyone here made my comments sexual, it's the lady who interpreted it."

It's the woman's fault, of course. Always is, right?

Thomas has been public and vocal about the incident:

"This was supposed to be light humor, you getting along with people, you know, the free exchange of what used to be protected under the First Amendment sort of thing?" Higbie asked Moates.

"Right," Moates answered.

In Moates' world, the First Amendment protects creepers, *but doesn't protect photographs of a political candidate.* Interesting interpretations! These morons don't even understand what the First Amendment is all about! (To be clear, it's about the ability of *government* to restrict someone's speech. Nothing in the Constitution protects aspirational pederasts from their predatory words.)

In any case, all of this was confined inside the conservative media bubble until Moates decided to go after AOC. His misogynistic efforts caught the eye of none other than Stormy Daniels. After she tweeted about Moates' attack on AOC, Moates stupidly decided to amplify her tweet with a "thanks for all the free followers @StormyDaniels. I appreciate the attention."

Her response was one for the ages:



After that beat-down, he scrubbed his entire Twitter feed. Later on, Twitter banned him *outright.*

That should've been the end of the story, but it seems as though now, a year later, Moates is attempting to scrub the internet of all of this terribly embarrassing material (which apparently includes his face). That is why we have this asshole threatening our hosting with bogus copyright claims, despite having used the First Amendment as an excuse to sexually harass underage girls.

That should've been the end of the story, but it seems as though now, a year later, Moates is attempting to scrub the internet of all of this terribly embarrassing material (which apparently includes his face). That is why we have this asshole threatening our hosting with bogus copyright claims, despite having used the First Amendment as an excuse to sexually harass underage girls.

And so you ready for this? On top of all that other horrible shit, we can add one more indictment against Moates—a single big-ass count of hypocrisy.

*Check out this screenshot from his website:*







WHAT THE WHAT? He's literally calling himself a "contributor" at THIS place, while using *our copyrighted logo* to illustrate his bullshit lie?

Turns out, he had an account! Bojo'd, of course, though he did manage to get two stories in before getting banned. But he's banned. And yet, there is that obvious lie, in all its glory, on his freakin' website.

He's *really* going to go after us for copyright infringement, when he himself is infringing on our copyright? Granted, it's not exactly attempted pedophilia, but with conservatives, there never is a bottom. They can always manage to be just a little worse than you already thought they were.

So f' that guy. His attempts to scrub the web of his mug just backfired on him. He'll be getting a letter from our lawyer soon. And I had way too much fun re-exposing him to the world. Thanks to republicinsanity for getting the ball rolling on this, however inadvertent it might've been!

p.s. Community member CajsaLilliehook is up to 525 conservative sexual predators, abusers, and enablers, in what is an unfortunately long-running series.

15.    Moates' publication with the Denton Record Chronicle is a letter to the editor in which he called for a member of the Denton City Council to resign:[14]



[14] Denton Record-Chronicle, *available at* https://dentonrc.com/opinion/letters_to_editor/letters-to-the-editor-nov-9/article_8a0c9141-7df7-500e-9a05-b9aa24968286.html (last accessed August 30, 2021).

16.    A search on the Independent Journal Review reveals nothing:

17.    Indeed, Moates' helter-skelter "career" in journalism was even marked by allegations of plagiarism:





NATION ONE NEWS STORY . . .

**Walmart, Dick's Sporting Goods Sued**

Source: https://nationonenews.com/2018/03/06/walmart-dicks-sporting-goods-sued-20-year-old/

ACTUAL BYLINE: MARIA PEREZ
FOR NEWSWEEK

U.S.

**WALMART, DICK'S SPORTING GOODS SUED BY 20-YEAR-OLD OVER NEW GUN RESTRICTIONS**

Source: https://www.newsweek.com/guns-lawsuit-wal-mart-dicks-sporting-goods-oregon-us-832615.



18.     Moates is also a notorious social media troll, and frequently targets women. He has taunted the likes of U.S. Representative Alexandria Ocasio-Cortez, porn star Stormy Daniels, CNN Reporter Kaitlan Collins, Candidate for U.S. Senate Candidate Dr. Kelli Ward (for whom he worked):





**Stormy Daniels** ✓
@StormyDaniels

You're welcome, honey. Hopefully none of them are underage so you can't get in trouble again

Michael Moates 📧 ✓ @freedom_moates
Thanks for the free followers @StormyDaniels. I appreciate the attention.

11/11/18, 12:42 AM



**Michael Moates** ✰ ✰ ✰ ✓
@freedom_moates

I'm sorry is Alexandra not a female dog? We know Stormy is a horse.

Leslie Marshall ✓ @LeslieMarshall
To @freedom_moates or any other man who wants to refer to women as b*tches, the true definition of a b*tch is: a female dog, wolf, fox, or otter.  Not a person who disagrees w u & happens to have different genitalia; & who you clearly feel threaten...

6:50 PM · Dec 7, 2018 · Twitter Web Client





 **Tiana Lowe** ⊛
@TianaTheFirst                                    ⌄

This is an extremely unfair smear of
the Examiner. Many of my colleagues
and I have retweeted and shared the
multiple stories reporting on Michael
Moates' persistent sexual harassment
and targeting of underage girls. I
personally disavow him as a creep & a
fraud.

**Alexandria Ocasio-Cortez** ⊛ @Ocasio2018
Hey, Michael Moates (@freedom_moates)!

You can run from your misogyny, but you can't
hide.

And @dcexaminer can't hide that they choose
to publish you AND the journalist who posted a
creep shot of my behind to discuss my

---

 **Michael Moates** ⊛
@freedom_moates                                   ⌄

My new neighbor is a liberal feminist. I
just renamed my WiFi to Trump is your
President.

12:54 PM · 12/31/18 · Twitter for iPhone

**7,526** Retweets **36.5K** Likes



**Michael Moates**
@mmoates

Replying to @NickJFuentes

Found your friend

 **Kassy Dillon** ✔
November 30, 2017 · 

So Fake News writer Michael Moates decided to write a hit piece about me and Lone Conservative. Here is a great explanation of what happened:

ROUSERNEWS.COM
**Nation One News (Michael Moates) Recklessly Fabricates Attacks on Conservatives**
Yesterday, the Nation One News Foundation, the second-run of the former Narrative Times News Foundation, published another attack article on...

🖒 8                                                    3 Shares

 **Share**





19. Moates has also called for "shoot[ing]" migrants "on site:"





20.   Moates also targets Black civil rights and social issues. He asks is people are "black supremacists," tells celebrities that they "play the I'm black and I'm a victim card," says Black Lives Matters is terrorism, and taunts individuals by referring to their experience "in the hood."





**Michael Moates** ⊕ @freedom_moates · Aug 13
Replying to @OMAROSA
You are a disgrace to the **black** community and women.

💬 29    🔁 32    ♡ 533    ✉



**Michael Moates** ⊕ @freedom_moates · Aug 22
Have you lost your ever fucking mind? Turn off your **Black** supremacy for a second and understand that an ILLEGAL ALIEN MURDERED her. You @SymoneDSanders are sick for blaming the victim. May you experience the pain this family is feeling.

**Symone D. Sanders** ⊕ @SymoneDSanders
Mollie Tibbetts was murdered b/c she told a man to leave her alone while she was jogging. Her murderer happens to be undocumented. This isn't about border security. This is about toxic masculinity. Mollie Tibbetts lost her life b/c a man couldn't take her saying no. Full stop.

Show this thread

💬 37    🔁 71    ♡ 229    ✉



**Michael Moates** ⊕ @freedom_moates · Jun 24
Say it with me: **BLACK** LIVES ARE NOT MORE IMPORTANT THAN WHITE LIVES. All Lives Matter

💬 19    🔁 114    ♡ 391    ✉



**COMMON** ⊕ @common · Jul 25
White Supremacy Is Terrorism.

💬 378    🔁 7.7K    ♡ 25K    ✉

**Michael Moates** ⊕
@freedom_moates

Replying to @common

So is Black Lives Matter.

2:52 PM · 26 Jul 2018

Page 25 of 75



**Michael Moates** ✔ @freedom_moates · Aug 29 ⌄
Every time you remove a confederate statue you piss on people like Dr. Martin
Luther King who fought and won for the rights of **black** people. This is a part of
your history it shows how far you have come.

💬 18   🔁 30   ♡ 139   ✉

**Michael Moates** ✔ @freedom_moates · Aug 14 ⌄
Replying to @DrJasonJohnson

Where's the evidence big guy? We don't live in the **hood** where you shoot and ask
questions later. Evidence first.

💬 4   🔁   ♡ 4   ✉

**Michael Moates** ✔ @freedom_moates · Aug 8 ⌄
Replying to @DJBlackmon

They literally advocated for the stopping of job creation with Uber. Maybe if
*instead of believing your friends in the **hood** you did your own research you
might learn something.*

💬 3   🔁   ♡ 1   ✉

**Michael Moates** ✔ @freedom_moates · Jun 17 ⌄
Obama won because he showed America what it was like to live in the **hood**...
Trump won to get us out of this shithole **hood** Obama put us in. #MAGA

💬 17   🔁 105   ♡ 387   ✉

**Michael Moates** ✔ @freedom_moates · 19m
I identify as a Mexican so my name must be Beto.

💬 28   🔁 27   ♡ 141   ✉



21.     Moates also believes that gender identity is "gender dysphoria" and a "mental disorder":





**Michael Moates** ✓ @freedom_moates · 33m

Replying to @TheDemocrats

Trans is a mental disorder. #GenderDysphoria

💬 3          ⟲ 8          ♡ 89          ✉





**Chris Geidner** ✓ @chrisgeidner · 2m          ⌄

Dear, please go do some reading before you tweet at me any more or I'm going to block you. I am a lawyer, I practiced for several years, I was the editor of my law journal, and I've been writing about the courts for the past decade.

💬 3          ⟲          ♡ 1

**Michael Moates** ✓          ( Follow )          ⌄
@freedom_moates

Replying to @chrisgeidner

You are not currently licensed to practice law. Feel free to block me, pussy. That's what those who lose arguments do.

22.    Moates has also been noted for targeting underage girls and then petitioning Google to delist reports about his sexual harassment:[15]



> # Bogus Copyright Complaints Sought to Suppress Michael Moates Sexual Harassment Claims
>
> At least three young women have accused conservative writer Michael Moates of sending sexually suggestive messages
>
> Multiple bogus copyright complaints sought to suppress sexual harassment claims made last year against conservative writer and D.C. Chronicle founder Michael Moates
>
> The complaints, sent in Moates' name over a five-month period starting October, requested that Google delist six news articles concerning Moates' alleged misconduct towards three young women, including two underage girls.
>
> Michael Moates (source)
>
> The three women, Purity Thomas (16), Hadassah Cohen (17), and Kylie Thomas (20), assert that Moates sent them inappropriate and sexually suggestive messages during discussions online and over text message. The claims, including that Moates told Cohen that she "couldn't possibly be telling the truth that [she] was a proud virgin...because [she] was too gorgeous for that," were first reported in October by Right Wing Watch, a liberal watchdog site of conservative media.
>
> According to statements and screenshots posted online, Moates texted Purity Thomas—then 15—that she was a "beautiful crazy chick"
>
> "This is Michael, correct?" Thomas asked in reply.
>
> "Yes lol," Moates wrote back. "Sorry I made a mistake lol"
>
> Thomas, currently the executive director of pro-life women's group reLOVE, had reached out to Moates to discuss her experience of being physically assaulted during a protest. But after talking to him, "[she] thought, 'You're not coming anywhere near my team,'" Thomas told Right Wing Watch

---

15 Shooting the Messenger Blog, *available at* https://shootingthemessenger.blog/2019/02/20/bogus-copyright-complaints-sought-to-suppress-michael-moates-sexual-harassment-claims/ (last accessed August 27, 2021).







**Laura Whittington** @laura_jones1987 · 18h
Are you denying the claims, or just saying there's no evidence to support them...?

**Michael Moates** @freedom_moates · 18h
I am denying them.

1) Calling someone beautiful does not = sexual harassment.

2) I do not plagiarize anything. I have syndication agreements with multiple organizations. You will see AP articles on Fox frequently.



**Michael Moates** 🇺🇸 @freedom_moa... · 1m
If you're going to target someone accusing them of sexual harassment at least make sure that you're attractive first

23.    Moates has also had his twitter account suspended, for, upon information and belief, his calls to shoot migrants. Moates threatened legal action "war games."



**DC Chronicle News** shared **Michael Moates's** post.
February 4 at 7:58 PM · 



**Michael Moates** February 4 at 7:36 PM · 

Let the war games begin

24.     There is also separate Twitter account that is dedicated to exposing Moates' antics:





25.    It has also been noted that Moates created a fake Democratic candidate for Alabama's House of Representatives, Third District.[16] Her name was "Hannah Thompson," and purported to be a transgender woman. The website, which cobbled together the pieces of information, notes, "On June 26, 2018 'Hannah Thompson' registered with the @FEC as a candidate in Alabama. Notice that email address? That's Moates email address and he uses it frequently, as evidenced by screenshots from his twitter account. He was using it in June, when he filed this."[17]



---

[16] Samantha Kramer, *Who is Hannah Thompson, you ask? Well, settle in, kids! It's time for a thread about the time Michael Moates / @freedom_moates stole a woman's identity and created a fake democratic candidate for Alabama's House of Reps, District 3*, available at https://threadreaderapp.com/thread/1052207924532207616.html
[17] *Id.*



26. It appears Moates also registered a website for the fictional candidate:



27.   The same day that Moates created the fictional candidate, he tweeted that he was "about to be the ultimate troll that the liberals will new know about."



28.   Moates claims to be a Doctor of Education Student and Fielding Graduate University, a Master of Arts in Interdisciplinary Studies Student at Liberty University, a Senior Member of the Civil Air Patrol, US Air Force Auxiliary, a former member of the White House Press Corps, and was a candidate, for one week, for U.S. Congress.

29.   Moates also claims that he is a Registered Behavior Technician, Certified Physician Investigator, and emergency medical technician.

30.     The Texas Department of Licensing & Regulation, however, does not have any record of licenses or certifications of Moates:[18]



B.  Moates' *six-year* epic of alleging wrongdoing by Lone Star College.

31.     Moates' "journalism," social media trolling, multiple graduate and post-graduate enrollments, and professional registrations did not consume all his time. He reserved some to take courses at Lone Star College and allege wrongdoing whenever he disagrees with an actual or potential course outcome.

32.     In 2015, Moates started taking courses at Lone Star College. He also started claiming discrimination based on disability with regard to those courses.

33.     In January 2016, Moates contacted Lone Star College's Office of General Counsel.[19] He alleged discrepancies with accommodations under the Americans with Disabilities Act ("ADA").

---

[18]     Texas        Department        of        Licensing        &        Regulation,
https://www.tdlr.texas.gov/LicenseSearch/SearchResultsListBrowse.asp?from=search
[19] Exhibit A, Letter from Lone Star College System, Office of General Counsel.

*Complaint 1: Fall 2015 Courses.*[20]

34.     Moates alleged that he did not receive any response to numerous emails that he sent to "OnlineAdvisor@LoneStar.edu" requesting accommodations. Moates initiated a grade appeal based in part on the alleged failure to accommodate. Moates also initiated a student civil rights complaint based on the same issue. Finally, Moates contacted Lone Star College's Office of General Counsel ("OGC") after he was not pleased with the outcome of the grade appeal—it was denied. He asked for his grades to be changed or to withdraw from the course.

35.     Moates     produced     the     supposed     emails     that     he     sent OnlineAdvisor@LoneStar.edu. Lone Star College noted that the emails were addressed in reverse—from Lone Star College to Moates. That is, it appeared that Lone Star College requested an accommodation from Moates:

---------- Forwarded message ----------
From: OnlineAdvisor@LoneStar.edu
Date: Mon, Oct 19, 2015 at 4:31 PM
Subject: Michael Moates Disability
To: Michael Moates <michaelsmoates@gmail.com>

Hello,

My name is Michael S. Moates. I want to put my 504 plan into place. Please email me back or call me at 817-880-4326. I need to get these put into place ASAP. I have attached a copy of my documentation from the Child Study Center and Dr. Julian Haber.

Respectfully,

Michael Moates

---

[20] *See* Ex. A.

36.     Additionally, the date and day of the week in at least one email did not square (January 16, 2015 was a Friday, not a Tuesday):

---------- Forwarded message ----------
From: OnlineAdvisor@LoneStar.edu
Date: Tues, Jan 16, 2015 at 2:07 PM
Subject: Michael Moates Accommodations
To: Michael Moates <michaelsmoates@gmail.com>

Hello,

My name is Michael Moates. I have some accommodations I need to discuss with someone. Please email me back or call me at 817-880-4326. I need to get these put into place ASAP.

Respectfully,

Michael Moates

37.     Noting the discrepancies, Lone Star College contacted its IT group, which confirmed that it had no record of such emails.

38.     Therefore, Lone Star College assessed the emails to lack credibility.

39.     Lone Star College's Student Success Center informed the Office of General Counsel that Moates first requested an accommodation on December 14, 2015.

40.     When Moates contacted the Student Success Center, he sought unlimited time to complete exams as an accommodation. Moates was about 21 at the time he requested an accommodation and submitted a note from a psychologist in support of his request. The evaluation was done when about eight years earlier, when Moates was 13. The Student Success Center determined that that he should receive 50% more time on exams and in-class assignments. Lone Star College provided that accommodation on the same day.

41.     Based on the above, Moates' grade appeal was unsuccessful.

*Complaint 2: Winter 2015 Course.*[21]

42.     Moates' second complaint regarded an alleged failure to accommodate his disabilities in a government course he took in the winter of 2015. Here too, he appealed the outcome of that course. Lone Star College accommodated Moates by granting him an additional 30 minutes to complete a 60-minute, multiple-choice exam. But when Moates went to take the exam, the additional 30 minutes of time had not been allotted in the testing software.

43.     Notwithstanding the lack of additional time, Moates finished the exam in 48 minutes. That is, Moates came in under the standard amount of time that every other student had to complete the exam. Moates still complained.

44.     Moates contended that he wanted the exam, that he had already seen, re-opened or for another multiple-choice exam to be proctored. Moates contended that the government professor failed to accommodate him because he provided an alternative essay exam to Moates instead of a multiple choice exam option.

45.     Here too, Lone Star College reviewed the contemporaneous emails between Moates and the professor regarding the exam at issue. Notwithstanding Moates contention that he had to take the essay exam, the professor had offered Moates—in three separate instances—an opportunity to take an alternative multiple-choice exam with additional time. *Those contemporaneous emails reveal that Moates wanted the multiple-choice exam that he* had completed with 18 minutes to spare reopened and with additional time. Thus, Moates' initial solution was to, essentially, double dip by reopening the exam he had already taken.

46.     This grade appeal was also not successful.

---

[21] *Id.*

47.    At the conclusion of resolving Moates' complaints, Lone Star College admonished him that dishonesty was a violation of the student code of conduct and that fabrication of evidence was a serious violation that could have serious repercussion on his academic record.

### Complaint 3: U.S. Department of Education Office for Civil Rights ("OCR").

48.    On December 13, 2016, Lone Star College received a notice from the OCR that Moates alleged that Lone Star College discriminated against him based on disability in spring 2016 by failing to timely implement academic adjustments.[22] Moates filed this complaint on June 13, 2016.

49.    Lone Star College prepared a 119-page response to Moates' OCR complaint.[23] It then supplemented that response once it gathered additional information.[24]

### Complaint 4: OCR Complaint Number 2.

50.    Also on December 13, 2016, Lone Star College received a notice that Moates submitted a *second* complaint to the OCR on the same day as his first complaint. Moates' second OCR complaint alleged that Lone Start College failed to timely implement accommodations and retaliated against Moates.[25]

51.    The OCR consolidated Moates' two complaints.

### The OCR Dismisses Moates' Complaints and Notes That His Complaints Lacked Credibility

52.    On July 24, 2019, about three years after Moates submitted his complaints to the OCR, the OCR dismissed every single claim asserted by him and made findings that derided Moates' allegations. Specifically, the OCR noted as follows:

---

[22] *See* Exhibit B, OCR Notice (OCR Docket #06162239)
[23] Exhibit C, Lone Star College System OCR Response.
[24] Exhibit D, Lone Star College System Supplemental OCR Response.
[25] Exhibit E, OCR Notice (OCR Docket #06162009)

a. Moates' emails that he claims to have sent to onlineadvisor@lonestar.edu were unreliable.

b. Moates, after a direct request from the OCR, never sent it the email that he sent to Lone Star College that he claimed reflected his alleged attempts to email onlineadvisor@lonestar.edu.

c. Moates was provided an accommodation in just more than four hours after he called Lone Star College's Disability Service Office to request an accommodation (Moates complained that the accommodation, 50% more time to complete exams and in-class assignments, did not accommodate his academic needs; he wanted unlimited time).

d. Moates did not provide documentation from a psychiatrist supporting his request for unlimited exam time to Lone Star College, despite a request from Lone Star College to do so.

e. Moates supposed emails to onlineadvisor@lonestar.edu were not found to be credible because the addressees were reverse (from Lone Star College to Moates requesting an accommodation for him), because the dates on the emails were not chronological, and the date and time on one email did not correspond.

f. Lone Star College did not retaliate against Moates because he requested an accommodation.

g. Moates stated to the OCR that Lone Star College had been given disability accommodations, without prior discussion, that did not speak to his specific needs.

h. Lone Star College worked with Moates [despite what Moates had reported] to provide an accommodation of additional time on exams in the fall 2015 semester.

i. Lone Star College worked with Moates to provide an accommodation in spring 2016 (e.g., no penalty for spelling errors, double time for exams and in-class assignments, use of dictionary during exams, speech to text software, a request that point deduction be avoided for spelling errors, and frequent check-in calls).

j. Moates was provided double time to complete exams in Psychology 2314: Lifespan Development; Moates waited until the last day of the course to complete exams and ran out of time (after the exam availability dates had been extended for Moates).

k. Moates failed to provide information to support his assertion that he had contacted technical support in March of 2016 (Moates contended that technical issues prevented him from completing assignments).

53. The OCR's ultimate determination is as follows:

Thus, based on a careful review of the information received from the Complainant and the LSCS in this case, OCR determined that there is insufficient evidence to determine that the LSCS discriminated against the Complainant on the basis of disability or subjected the Complainant to retaliation, as alleged in his complaints. In light of the foregoing, OCR is closing these complaints as of the date of this letter. This concludes OCR's investigation of the complaints and should not be interpreted to address the District's compliance with any other regulatory provision or to address any issues other than those addressed in this letter.

## C. Moates takes two Biology courses in the summer of 2021.

54.     Moates registered for two courses in the summer of 2021: (1) BIOL 1322 ("Nutrition") and (2) BIOL 2404 ("Anatomy & Physiology").

55.     Moates had not completed assignments in the Anatomy & Physiology course, and it became déjà vu all over again.

56.     On July 15, 2021, Moates submitted an application for accommodations for his Anatomy & Physiology course.[26]

---

[26] Exhibit F, Email dated July 15, 2021.

57.    Moates followed up by emailing his professors a copy of the 2016 accommodation letter and outlining accommodations that he was seeking:[27]



58.    On July 16, 2021, Moates emailed Disability Services asking the 2016 accommodations be implemented until new accommodations could be approved.[28]

59.    On July 20, 2021, Disability Services approved accommodations for Moates, and sent Faculty Notification Letters to Moates' professors:



---

[27] Exhibit G, July 16, 2021 Email.
[28] Exhibit H, July 16 2021 Email ("Request").

*Complaint 5: Moates is upset that accommodations are not being provided in his Anatomy & Physiology Course*

60.     On July 22, 2021, Moates emailed and was upset that accommodations were not in place because he had multiple assignments due that day.[29] Moates followed up that same day.[30] Disability services worked with the Anatomy & Physiology professor to extend the deadlines on the assignments at issue until July 28, 2021. Indeed, there were extensive discussions about how to accommodate Moates.

61.     On July 25, 2021, Moates emailed that he was not comfortable with the Anatomy & Physiology professor's ability to provide accommodations.[31] Specifically, Moates reported that he was unable to take breaks during assignments and stated that he wanted to withdraw from the course such that the course was completely removed from his record and wanted to take the course again, for free, and with another professor:

Leslieann,

I have to be honest, I am not comfortable with this professor and her ability to apply my accomdations. It seems everything has become difficult. I would like to be removed from her class and be re-enrolled in this class in the fall with an alternative professor. I would ask that it be removed from my record, not a withdrawal and that I not be charged for transfering professors.

Can we make this happen? I am awfully concerned about moving forward given her continued lack of ability to provide my accomdations.

I am now being penalized for asking for the ability to take a break during my assignments? This is crazy and I shouldn't have to start over because I need a break.

Michael Moates, MA, QMHP-T, RBT, CPI
Doctor of Education Student, Fielding Graduate University

---

[29] Exhibit I, Email dated July 22, 2021 (2:28 p.m.).
[30] Exhibit J, Email dated July 22, 2021 (3:38 p.m.).
[31] Exhibit K, Email dated July 25, 2021.

62.     On July 28, 2021, the date that his assignments were due after the previously provided extension on July 22, 2021, Moates emailed because he claimed that accommodations were still not in place regarding his exams and advised that he intended to sue:[32]



63.     The Anatomy & Physiology professor emailed Moates to tell him that the testing center had emailed him with scheduling options to take his exam and has received no response. Moates claimed that he did not receive those emails.

***Complaint 6: Moates complains to Lone Star College's OGC regarding an alleged failure to provide accommodations in the Anatomy & Physiology course***

64.     Also on July 28, 2021, Moates contacted Lone Star College OGC seeking a "resolution" and stated that if he did not receive a resolution that he would file a lawsuit. OGC reviewed the situation. Moates alleged that he was not able to take exams and quizzes like other students because the exam software blocked access to other program while taking the exam. He claimed that he needed access to other programs while taking his exams so that he could utilize resources that he needed as an accommodation for his disabilities. Lone Star

---

[32] Exhibit L, Email dated July 28, 2021.

College had offered to accommodate him by allowing him to take the exam at a testing center, using a webcam, with a proctor viewing him over a webcam, or a library.

65.    The next day, on July 29, 2021, the OGC informed Moates that it would not get involved in the dispute, as it had reviewed information showing that accommodations had been communicated and that Moates had been offered multiple accommodations. The OGC informed him that if he was not pleased with the accommodations that he could follow the internal civil rights processes and accommodation appeal processes.

66.    The same day, Moates responded that if he did not get a resolution by 11 a.m. on July 30, 2021, he would file a lawsuit alleging disability discrimination and retaliation. Moates was advised that if he wanted to drop the course, that he could do so on or before August 10, 2021 and receive a "W." Moates filed his lawsuit that evening.[33]

### Complaint 7: Moates' lawsuit against Lone Star College and seven faculty and staff members.

67.    Moates filed an Original Petition in Denton County District Court on July 29, 2021, before the 11 a.m. July 30, 2021, deadline he had previously provided.

68.    Moates filed an Amended Petition on August 5, 2021.[34] Moates alleged that the Anatomy & Physiology professor was not providing him with accommodations he needed to complete assignments, and asserted various claims based on that.

69.    Moates sued Lone Star College and seven Lone Star College faculty and staff members for violations of the Texas Biometric law, Americans with Disabilities Act, Rehabilitation Act, Texas Constitution, Family Educational and Privacy Rights Act, Texas Deceptive Trade Practices Act, and the tort of Intentional Infliction of Emotional Distress.[35]

---

[33] *See* Exhibit M, Original Petition.
[34] See Exhibit N, Amended Petition.
[35] *Id.*

70.     Moates claimed that Lone Star College discriminated against him based on a myriad of disabilities: ADHD, Sleep Apnea, Anxiety, Insomnia, Depression, Asthma, and Dysgraphia. He also claimed that Lone Star College was obtaining biometric data (e.g., facial recognition) in violation of Texas law.[36]

71.     Counsel for Lone Star College informed Moates that he had been engaged to represent Lone Star College regarding the claims asserted by him and requested that future communications be directed to him.[37]

72.     Moates responded alleging First Amendment violations and threatening to go to the media:[38]



<hr>

[36] *Id.*
[37] Exhibit O, Email dated August 10, 2021.
[38] Exhibit P, Email from Moates dated August 10, 2021.

73.    Moates followed up to his prior email with threats of bar charges, criminal contempt, and filing more claims:[39]



74.    On August 10, 2021, Lone Star College removed his lawsuit to the United States District Court for the Eastern District of Texas, Sherman Division. The case was assigned civil action no. 4:21-cv-00631.

75.    That same day, Moates stated the he intended to seek remand and wanted to know if Lone Star College was interested in discussing his demands.

**Complaint 8: Moates complains to the Texas Higher Education Coordinating Board.**

76.    During discussions with Moates regarding his lawsuit, Moates revealed that he had submitted a complaint to the Texas Higher Education Coordinating Board ("THECB"). The THECB informed Moates that it did not investigate the type of complaint he submitted. Moates also noted that he believed he had also submitted an additional complaint with the Department of Justice but did not appear to have done so after all.

---

[39] Exhibit Q, Email from Moates Following Up.

**D. Moates enters into a contract releasing Lone Star College of any and all claims and promising to enter into a supplemental release once the Nutrition course is completed.**

77.     Lone Star College exists to educate students. It does not entangle itself in legal disputes with students. Lone Star College made the decision to resolve with Moates based, in part, on his offer to never to take classes at Lone Star College again.

78.     Moates and Lone Star exchanged offers and counteroffers.

79.     Lone Star College made peace with Moates and resolved the claims he asserted against it.[40] Lone Star College made its decision not because it had wronged Moates, but because it desired to amicably resolve a dispute a student asserted.

80.     Moates bargained to withdraw from the Anatomy & Physiology course, in which he had not completed assignments, and wanted to remain in the Nutrition course, in which he stated he had an "A."

81.     Indeed, Moates sought to garner reassurances from Lone Star College that he would in fact keep the "A" score. Specifically, Moates claimed that he had an eating disorder that prevented him from disclosing what he ate because of the anxiety it caused him to make such a disclosure.

82.     Lone Star College declined to make any such reassurance because it does not bargain grades, course work, or course outcomes. Lone Star College is serious about allowing its professors to structure and manage their courses. It is also serious about requiring students to achieve their own successful outcomes by working and using the tools and resources available to them at the college. Course work and scoring are left solely to the professor and are based on student performance and timely completion of course work.

83.     Moreover, Moates could request whatever accommodation was needed just as he had at least two other times.

---

[40] Exhibit R, Confidential Settlement Agreement and Release.

84.     Notwithstanding the foregoing, Moates and Lone Star College reached an agreement about how to resolve the lawsuit and his claims, and memorialized the agreement.

85.     Lone Star College provided Moates with a copy of the proposed release agreement.

86.     The Agreement made clear that the resolution was completely without regard to the outcome of the Nutrition course:

> Student shall remain a student of LSC for the sole purpose of remaining enrolled in BIOL 1322 ("Nutrition") until that course concludes, as determined by LSC in its normal course of administering courses, and whether or not completed by Student. Student is responsible for completing all coursework and requirements of Nutrition in the manner and in the timeframe in which they are required to be completed. Nothing in this Agreement, nor anything else, is a guarantee of Student's completion of Nutrition or any of any particular outcome. It is student's responsibility to fulfill all requirements of Nutrition in good faith and within the time/deadlines established by the course. Student's dispute of or displeasure with the ultimate outcome of Nutrition, or any other course, shall not be considered a breach of this Agreement. This Agreement makes no promise regarding the completion or outcome of Nutrition or any other course. Moreover, nothing in this Agreement shall modify Student's obligation to comply with LSC policies or meet LSC standards as he completes Nutrition, or otherwise. Nothing herein modifies LSC's ability to enforce its policies. Student agrees that he shall not at any time enroll in, apply to attend, or petition to attend, any other courses or offerings at LSC, or any LSC affiliated or related institution, or otherwise attend LSC, or any LSC affiliated or related institution, in any manner. Such agreement includes any course or offering no matter whether a cost is associated with it. Student also agrees that in the event he knowingly or unknowingly enrolls or becomes enrolled in any course or offering at LSC, or any LSC affiliated or related institution, that he will withdraw from such course or offering and/or cease attendance immediately upon notice from LSC. LSC shall be under no obligation to reimburse Student for any cost, including, but not limited to tuition and fees, for any course or offering from which he is required to withdraw or cease attending pursuant to this Agreement. LSC shall also be under no obligation to code Student's withdrawal or cessation of attendance in any particular manner. Student's obligation to withdraw or cease attendance is without regard to any deadlines regarding withdrawal or whether such withdrawal or cessation

will impact student's grade(s), grade point average, degree plan,
or any other factor or consideration. Student's agreement to not
attend LSC in the future shall not be classified as a suspension
or expulsion.

87.     Moates agreed to the above, and all other terms, and executed the agreement

on August 13, 2021.

88.     In order to achieve finality, the agreement states that Moates will sign the

second agreement until the Nutrition course is completed or concluded, as follows:

> **8.     Supplemental Release.** In exchange for the promise to pay the Reimbursement
> Amount, Student shall execute the Confidential Supplemental Release Agreement, attached
> hereto as Exhibit A, no sooner than the completion or conclusion of Nutrition and no later than
> August 31, 2021.

89.     Thus, the execution of the Supplemental Release in not based on any particular

course outcome.

90.     Next, Lone Star prepared dismissal documents and emailed them to Moates

for his review and approval.[41] Moates gave Lone Star College permission to sign and file a

joint stipulation of dismissal with prejudice:[42]

> **From:** Michael Moates <michaelsmoates@gmail.com>
> **Sent:** Tuesday, August 17, 2021 1:58 PM
> **To:** Stephen Quezada <squezada@grayreed.com>
> **Subject:** Re: [EXTERNAL] Answer
>
> Perfect. Just so you have it in writing, I approve the stipulated agreements to be filed with my
> electronic signature on my behalf pending the final signature.
>
> Glad we could resolve this!
>
> Sent from my iPhone

---

[41] Exhibit S, Email Providing Dismissal Documents.
[42] Exhibit T, Email from Moates Regarding Joint Stipulation of Dismissal.

91.   Lone Star College advised Moates that it would proceed to file:[43]

> **From:** Stephen Quezada
> **To:** Michael Moates
> **Subject:** RE: [EXTERNAL] Answer
> **Date:** Tuesday, August 17, 2021 3:00:00 PM
>
> Thanks Michael. I checked in with LSC. I am told that the signature is coming. I will get the documents on file.
>
> **From:** Michael Moates <michaelsmoates@gmail.com>
> **Sent:** Tuesday, August 17, 2021 1:58 PM
> **To:** Stephen Quezada <squezada@grayreed.com>
> **Subject:** Re: [EXTERNAL] Answer
>
> Perfect. Just so you have it in writing, I approve the stipulated agreements to be filed with my electronic signature on my behalf pending the final signature.
>
> Glad we could resolve this!
>
> Sent from my iPhone
>
> **Michael Moates, RBT, CPI**
> *Doctor of Education Student | Fielding Graduate University*
> *Master of Arts in Interdisciplinary Studies Student | Liberty University*
> *Senior Member, Civil Air Patrol, US Air Force Auxiliary*
> *State of Texas Commissioned Notary Public*
> *(817) 909-7524 | mmoates@email.fielding.edu*
>
> *"Yesterday is not ours to recover but tomorrow is ours to win or lose." - President Lyndon B. Johnson*
>
> "When I was a baby child, good and bad was just a game, many years and many triumphs, they proved to me they not the same"

92.   Moates received a copy of the filing by ECF:

> **Notice of Electronic Filing**
>
> The following transaction was entered by Quezada, Stephen on 8/17/2021 at 4:19 PM CDT and filed on 8/17/2021
> **Case Name:**    Moates v. Lone Star College System et al
> **Case Number:**   4:21-cv-00631-SDJ-KPJ
> **Filer:**    Lone Star College System
> **Document Number:** 4
>
> **Docket Text:**
> STIPULATION of Dismissal *with Prejudice Joint* by Lone Star College System. (Attachments: # (1) Text of Proposed Order Proposed Order)(Quezada, Stephen)
>
> 4:21-cv-00631-SDJ-KPJ Notice has been electronically mailed to:
>
> Michael Moates   michaelsmoates@gmail.com
>
> Stephen Jose Quezada   stephen.quezada@rslaw.com, cynthia.williamson@ogletreedeakins.com, HOUDocketing@ogletree.com, letty.anzaldua@rslaw.com, Stephanie.Murray-Alonso@ogletreedeakins.com

---

[43] Exhibit U, Email to Moates Regarding Filing.

93.   Moates received a copy of the filing email:[44]



94.   Moates also received a hard copy of the filing by mail:



---

[44] Exhibit V, Email Forwarding Joint Stipulation of Dismissal.

95.     Then, on August 20, 2021, Moates took issue with the score he received in his Nutrition course and reverted to his usual position: asserting discrimination based on a disability. This time, an eating disorder.

**E.  Moates claims he cannot complete a food log required in the Nutrition course because of an eating disorder and claims that Lone Star College discriminated against him on this basis.**

*Complaint 9: Moates claims disability discrimination regarding the score in his Nutrition course.*

96.     On August 21, 2021, Moates reported: "Just as I feared with the nutrition assignment and brought up to many of you, the professor has given me a 0 for the food log. The food log was directly releated [*sic*] to my disability – eating disorder. It required me to release information about my disability I am not required to do. I asked for an alternative assignment because I am not required to release information related to my disability to anyone but disability services. Please note the accomdation [*sic*] letter states [*sic*] 'The students **disability-related information** [*sic*], including affiliation with our office, **is considered protected information under FERPA** and **should not be shared with anyone**' [*sic*] The information requested would require disclousre [*sic*] of my disability."[45]

97.     Moates took the positions that he would not "sign the second agreement until [the Nutrition score] was resolved."[46]

98.     Moates followed up on August 22, 2021.[47] He took the position that he wanted to resubmit the food log assignment as an example rather than identify his personal food choices. Moates stated that he was not comfortable sharing his food intake because of an eating disorder.

---

[45] Exhibit W, Email dated August 21, 2021.
[46] *Id.*
[47] Exhibit X, Email Date August 22, 2021.

99.    Moates contended that he had requested accommodations in writing prior to the assignment deadline through Disability Services and that he had provided notice to Lone Star College's outside counsel.

100.    Moates also stated that he was "a bit confused" because the professor had instructed him to read the instructions and look at the example provided.[48] Moates, rather opportunistically, stated that he believed that to be permission to resubmit the food log.

101.    Lone Star College conducted due diligence and found that Moates had not requested an accommodation for Nutrition course.

102.    On August 24, 2021, Moates was advised that if he was displeased with the outcome of the course, he should follow Lone Star College's procedure for appealing it.

***Complaint 10: Moates appeals the score received in his Nutrition course.***

103.    On August 24, 2021, Moates submitted a grade appeal, challenging his score in the Nutrition course.[49] He asserted the following issues:

---

To Whom It May Concern:

We are here today so that I can document the following problems and seek a resolution:

Violation of the Americans with Disability Act
Violation of Section 504 of the Rehabilitation Act of 1973
Violation of the First Amendment of the United States Constitution
Violation of Article 1 Section 3 of the Texas Constitution
Violation of Article 1 Section 19 of the Texas Constitution
Violation of the Family Educational and Privacy Act - 20 U.S. Code § 1232
Intentional Infliction of Emotional Distress
Mathematical Error in Calculation of Grade
Deviation from LSC Policy Manual, Section VI.D.10
Deviation from LSC Policy Manual, Section II.E.1.02
Deviation from LSC Policy Manual, Section VI.D.11
Deviation from LSC Policy Manual, Section VI.D.12
Deviation from LSC Policy Manual, VI.D.11.05.
Deviation from the Course Syllabus

---

[48] *Id.*
[49] Exhibit Y – Grade Appeal.

104.    Moates also advised that he is gearing up for litigation and that he plans to file a new lawsuit, and complaints with the OCR, THECB, and the Department of Justice.[50] He also advised that once he files, he would not be negotiating. Further, Moates threatens that he will go to the media and name Lone Star College, and six of its employees as defendants.[51]

105.    Lone Star College responds that it cannot do anything regarding the outcome of the Nutrition course by way of some claim negotiation. Because of Moates' contention that he intended to sue, Lone Star College advised that it would counterclaim for breach of contract.[52]

106.    On August 24, 2021 at 8:39 p.m., Moates advised that he intended to reach out to the ACLU and was prepared to fight all the way to the Supreme Court. He stated, "respectfully bring it on" and advised that he "can go out gracefully, or [that he] could go out fighting...."[53]

107.    Then, Moates apparently had a realization that the score he was complaining about was actually a "B" and not a "C."[54] He stated:

On Aug 24, 2021, at 10:01 PM, Michael <michaelsmoates@gmail.com> wrote:

You know I have to say I was under the impression I was going to get a C and I just realized I got a B.

Had that been communicated to me I probably would have let this claim go despite the fact that I thought I deserved an A. But now that your outside attorney has threatened me I am going to do everything I need to do to get that A.

Maybe next time you shouldn't threaten students who pay your paycheck. You could have seen me walk away from this happy. All you had to do was communicate the grade.

Stephen clearly isn't a bright individual as he could have resolved this claim for you.

--
**Michael Moates, MA, QMHP-T, RBT, CPI**
Doctor of Education Student | Fielding Graduate University
Senior Member, Civil Air Patrol, US Air Force Auxiliary
State of Texas Commissioned Notary Public
(817) 899-7594 | mmoates@email.fielding.edu

---

[50] Exhibit Z – August 26, 2021 Email Regarding New Lawsuit and Other Actions.
[51] *Id.*
[52] Exhibit AA, Email Regarding Counterclaim.
[53] *Id.*
[54] Exhibit BB, Email Regarding "B" Score.

108.    He also made new demands of Lone Star College, directly to Lone Star College personnel and not to counsel for Lone Star College, in order for him to accept a "B" score in the Nutrition class:[55]

From: Michael Moates <michaelsmoates@gmail.com>
Date: August 25, 2021 at 12:07:38 AM CDT
To: "Molina, Nancy" <Nancy.M.Molina@lonestar.edu>
Cc: "Castillo, Mario" <Mario.K.Castillo@lonestar.edu>, "Head, Steve" <Steve.Head@lonestar.edu>, Office of the Chancellor <Chancellor@lonestar.edu>
Subject: SA

Mrs. Molina,

I am sending you this email as a courtesy. I will accept the B if the following conditions are met:

1st - Stephen will not contact me again. If he does I will not sign the agreement. Furthermore, I will consider it harassment and file a police report. This is not a request it is a formal notification.
2nd - I am going to speak to the Board next month and you are saying that is acceptable. I am going to let them know of how this last 24 hours transpired. How you almost came into litigation because he threatened me.
3rd - After the agreement is signed. I will be permitted to leave with no disparagement from the college about me.
4th - I will get the full payment as agreed to.
5th - The W will be marked with cause as agreed.

This is a god-send for you guys. Because he has treated me poorly. But I am not going to punish the college for his childish threats.

Let me know if this is acceptable to you.

This is a settlement offer under Rule 408.

Offer expires end of business 25 August 2021.

Michael Moates, MA, QMHP-T, RBT, CPI
Doctor of Education Student | Fielding Graduate University

109.    Moates then raised an issue with getting his transcripts and urged that he wanted a guarantee that his "B" score would remain. But as Lone Star College had advised, it does not bargain course outcomes in litigation. Moates dug in and refused to sign the supplemental release that he had already promised to sign.[56]

---

[55] Exhibit CC – Email Regarding Accepting the "B" Score.
[56] Exhibit DD, Refusal to Sign.

110.    In the meantime, the Dean of Instruction notified Moates that the "B" score was final:

> **From:** Kelly, Jess
> **Sent:** Thursday, August 26, 2021 11:43 AM
> **To:** michaelsmoates@gmail.com
> **Subject:** Nutrition Final Grade
>
> Mr. Moates:
>
> Professor Beverly Copeland has submitted final grades for your Nutrition course and these grades submitted for this course are final.  Your final grade in the course was 79.3% which your professor rounded up to final grade of "B" for the course.  I wish you success in your future academic endeavors.
>
> Sincerely,
>
> **Jess Kelly, Ph.D.**
> Dean of Instruction – Math and Sciences
> Lone Star College – University Park

111.    This, however, was still not good enough for Moates. He wanted a contractual agreement regarding the course outcome. Again, Lone Star does not bargain course outcomes and rejected Moates' attempt to do just that.

### F. Moates begins emailing trustees, the Chancellor, the General Counsel, and the Chancellor's Chief of Staff.

112.    Unable to have his grade changed by threatening legal action, Moates begins to email Lone Star College's Board of Trustees.

113.    On August 26, 2021, Moates emailed Lone Star College's Board of Trustees to threaten sending a press release to 600 members of the media, every college president and chancellor in Texas.[57]

### G. Moates claims his signature was forged.

114.    On August 27, 2021, Moates notified Lone Star College that he intended to file a motion to set aside the judgment in the federal case, despite the case having ended based on the joint stipulation of dismissal. Moates also notified Lone Star College that he intended

---

[57] Exhibit EE, Email to Trustees dated August 26, 2021; Exhibit FF, Press Release.

to file a motion for sanctions contending that his signature had been forged. Moates did so that same day.[58]

115.     Thus, Moates has repudiated/breached the agreement.

116.     Moates' breach is causing and will cause immediate and irreparable harm to Lone Star College. Lone Star College is a taxpayer funded institution and its resources are limited. Moates' continuous vexatious litigation is causing Lone Star College to expend its resources and time in a manner that harms its purpose.

117.     Moreover, this lawsuit is necessitated because of Moates' actions. Moates is clearly in breach of the agreement by improperly requesting to have it invalidated. Moates is also in breach of the agreement because he is challenging in an improper venue. The parties agreed that venue for any suit regarding the agreement would be Harris County, Texas. Moreover, Moates continues to contact Lone Star College personnel to assert allegations regarding his claims and to make demands to settle those claims. Lone Star College has appointed outside counsel to represent it and advised Moates to go through its outside counsel. As noted above, Moates has repeatedly not respected the attorney-client relationship.

118.     In cases such as this, Lone Star College is entitled to receive its attorneys' fees. It is highly unlikely that Moates will be able to pay such a judgment. He has moved to proceed as a pauper in litigation that he himself has filed. He did so in Michael Moates v. Facebook Inc., et al; Civ. A. No. 4:2020-cv-00896; In the United States District Court for the Eastern District of Texas, and he did so in the litigation he filed against Lone Star College while it was pending in Denton County District Court (Cause. No. 21-6417-362).

119.     Moreover, Moates is depriving Lone Star College of its benefit of the bargain.

---

[58] Exhibit GG, Email Regarding Motion to Set Aside Judgment and Declare Settlement Agreement Invalid; Exhibit HH, Motion to Set Aside Judgment and Declare Settlement Agreement Invalid.

120.   Finally, these matters are little more than an exercise in bad faith and an extension of Moates' social media trolling. Moates seeks to taunt rather than adjudicate a dispute. The attached emails demonstrate Moates' bad faith. Highlights include:

---

**Stephen Quezada**

| | |
|---|---|
| From: | Michael <michaelsmoates@gmail.com> |
| Sent: | Thursday, August 26, 2021 3:36 PM |
| To: | Stephen Quezada |
| Cc: | Head, Steve; Office of the Chancellor; Castillo, Mario; Molina, Nancy |
| Subject: | Re: [EXTERNAL] Fwd: Nutrition Final Grade |

You're right... so I don't know why you continue to act like such a fool and make remarks like that. It's not productive, it's disrespective and I wonder what the board will say when they understand that Chancellor Head, Mr. Castillo, and Mrs. Molina forced me to continue chatting with you despite my request not to because you make me uncomfortable.

When I show the board the kind of statements that the General Counsel has authorized you to make on the behalf of Lone Star College.

When I show the court what kind of statements you are making...

So unprofessional. I bring claims you breaking snarky inappropriate remarks.

You make me feel uncomfortable. cause my anxiety to sky rocket, and you bully me.

I can't believe the college would authorize this.

On Thu, Aug 26, 2021 at 3:32 PM Stephen Quezada <squezada@grayreed.com> wrote:

OK. Like I said before, we are done. There is no sense in engaging this way anymore. It is not productive, and I will not be responding to your taunts. Have a good evening, Michael.

---

From: Michael <michaelsmoates@gmail.com>
Sent: Thursday, August 26, 2021 3:28 PM
To: Stephen Quezada <squezada@grayreed.com>
Cc: Head, Steve <steve.head@lonestar.edu>; Office of the Chancellor <Chancellor@lonestar.edu>; Castillo, Mario <Mario.K.Castillo@lonestar.edu>; Molina, Nancy <nancy.m.molina@lonestar.edu>
Subject: Re: [EXTERNAL] Fwd: Nutrition Final Grade

Lol you just attached my email where I said you had my signature pending - when I got the final signature from Steve Head.

Please keep going your comments will make a great release to the media plus they give me a laugh.

---

Michael,

You must be consulting with Rudy Giuliani or Sidney Powell.

**From:** Michael <michaelsmoates@gmail.com>
**Sent:** Thursday, August 26, 2021 3:11 PM
**To:** Stephen Quezada <squezada@grayreed.com>
**Cc:** Molina, Nancy <Nancy.M.Molina@lonestar.edu>; Office of the Chancellor <Chancellor@lonestar.edu>; Head, Steve <Steve.Head@lonestar.edu>; Castillo, Mario <Mario.K.Castillo@lonestar.edu>
**Subject:** Re: [EXTERNAL] Fwd: Nutrition Final Grade

I would be surprised if you didn't know this... but did you know making a false misrepresentation to a federal court is against the law? I said you could file my dismissal once I had a copy of the executed document. You filed it before without my consent.

Talk about signing my name without my consent. It's a crime. Forgery.

Gotta love attorney consultations.



Michael                                    2:42 PM
To: Stephen   Cc: Nancy, Office & 2 more... >

**Re: [EXTERNAL] Fwd: Nutrition Final Grade**

Stephen,

😊😊😊😊😊For the record, I really like Sidney Powell. She is a sweetheart. See the attached picture. 😊😊😊😊😊😊😊

On Thu, Aug 26, 2021 at 3:22 PM Stephen Quezada <squezada@grayreed.com> wrote:

Michael,

You must be consulting with Rudy Giuliani or Sidney Powell.



---

**Stephen Quezada**

| | |
|---|---|
| **From:** | Michael Moates <michaelsmoates@gmail.com> |
| **Sent:** | Thursday, August 26, 2021 2:07 PM |
| **To:** | Stephen Quezada |
| **Cc:** | Molina, Nancy; Office of the Chancellor; Head, Steve; Castillo, Mario |
| **Subject:** | Re: [EXTERNAL] Fwd: Nutrition Final Grade |

To be clear that is not what I said. ☐☐☐

I said that I was willing to sign but you were going to acknowledge that saying this is the final grade is material to me and is the reason I am signing away future claims.

Since you are continuing to make false statements I am happy to send you a screenshot so that you can actually see what I said just in case your mind can't figure out how to find it.

Sent from my iPhone

**Michael Moates, RBT, CPI**
*Doctor of Education Student | Fielding Graduate University*
*Master of Arts in Interdisciplinary Studies Student | Liberty University*
*Senior Member, Civil Air Patrol, US Air Force Auxiliary*
*State of Texas Commissioned Notary Public*
*(817) 999-7534 | mmoates@email.fielding.edu*

---

**Stephen Quezada**

| | |
|---|---|
| **From:** | Michael <michaelsmoates@gmail.com> |
| **Sent:** | Thursday, August 26, 2021 3:44 PM |
| **To:** | Stephen Quezada |
| **Cc:** | Head, Steve; Office of the Chancellor; Molina, Nancy; Castillo, Mario |
| **Subject:** | [EXTERNAL] Facebook |
| **Attachments:** | Screen Shot 2021-08-26 at 3.42.55 PM.png |

I'm sure Facebook will get a chuckle out of this. Posted on LSC page.

--

**Michael Moates, RBT, CPI**
*Doctor of Education Student | Fielding Graduate University*
*Master of Arts in Interdisciplinary Studies Student | Liberty University*
*Senior Member, Civil Air Patrol, US Air Force Auxiliary*
*State of Texas Commissioned Notary Public*
*(817) 999-7534 | mmoates@email.fielding.edu*

**"Yesterday is not ours to recover but tomorrow is ours to win or lose." - President Lyndon B. Johnson**

**"When I was a baby child, good and bad was just a game, many years and many triumphs, they proved to me they not the same"**



**Stephen Quezada**

| | |
|---|---|
| **From:** | Michael Moates <michaelsmoates@gmail.com> |
| **Sent:** | Thursday, August 26, 2021 1:48 PM |
| **To:** | Stephen Quezada |
| **Cc:** | Molina, Nancy; Office of the Chancellor; Head, Steve; Castillo, Mario |
| **Subject:** | Re: [EXTERNAL] Fwd: Nutrition Final Grade |

I will also file where I filed before and you can go through the process of removing it a federal court and then transferring it. And then once it finally gets to Houston's courts after so many days... The media will be in a great position to look at all of the documents. Also, note that if the settlement agreement or any other document is submitted for the record it becomes public on the court record. Therefore anyone can access it and it's not my problem whether or not it's disclosed.

I have talked to three individuals who LSC pushed into signing a confidential agreement who I will subpoena to testify. Your confidential agreement will not stop me from getting the information to the public.

Sent from my iPhone

**Michael Moates, RBT, CPI**
*Doctor of Education Student | Fielding Graduate University*
*Master of Arts in Interdisciplinary Studies Student | Liberty University*
*Senior Member, Civil Air Patrol, US Air Force Auxiliary*
*State of Texas Commissioned Notary Public*
*(817) 999-7534 | mmoates@email.fielding.edu*

*"Yesterday is not ours to recover but tomorrow is ours to win or lose." - President Lyndon B. Johnson*

**"When I was a baby child, good and bad was just a game, many years and many triumphs, they proved to me they not the same"**

---

**From:** Michael <michaelsmoates@gmail.com>
**Date:** August 26, 2021 at 3:41:06 PM CDT
**To:** "Molina, Nancy" <Nancy.M.Molina@lonestar.edu>, "Head, Steve" <Steve.Head@lonestar.edu>, Office of the Chancellor <Chancellor@lonestar.edu>, "Castillo, Mario" <Mario.K.Castillo@lonestar.edu>
**Subject: FYI**

> CAUTION: This email originated from outside of Lone Star College. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Suggestion - You should consider making a statement that you are not targeting conservative students given his last statement.

I will be contacting the attorney general's office in a few minutes.

Also, given your last free speech issue with conservative students this is not a good look.

## VI.    Cause of Action

**Count 1: Breach of Contract.**

121.    Lone Star College incorporates by reference the above allegations.

122.    Lone Star College entered into a written agreement with Moates. The agreement is enforceable.

123.    Lone Star College performed under the agreement.

124.    Moates advised that he would not perform as promised under the agreement, and therefore repudiated it. Namely, Moates failed to execute the supplemental release agreement that he agreed to sign.

125.    Moates has also breached the agreement by seeking to invalidate it and set aside the "judgment" in the lawsuit that the agreement resolved.

126.    Alternatively, Moates failed to perform under the agreement and therefore breached it.

127.    Moates' repudiation and/or breach caused Lone Star College damages.

128.    Lone Star College seeks actual and consequential damages caused by Moates' breach/repudiation.

129.    Lone Star College also seeks specific performance.

130.    Lone Star College also seeks it reasonable and necessary attorneys' fees.

## VII.    Application for Injunctive Relief

131.    Lone Star College incorporates by reference the above allegations.

132.    Lone Star College requests that the Court enter a temporary restraining order enjoining Moates from intentionally filing a claim in an improper jurisdiction and harassing Lone Star College employees and trustees. As explained above and below, Lone Star College has established that it has a substantial likelihood of success with regard to a cause of action,

shown that there is immediate, irreparable harm that will result, and that there is no adequate remedy at law.

133.   There is a substantial likelihood that Lone Star College will prevail on the merits. Unless enjoined, Lone Star College will be unable to enjoy its benefit of the bargain and it will be caused to needlessly expend taxpayer funds to defend against Moates in an improper venue.

134.   Moreover, Moates will continue to harass Lone Star College's trustees and employees and deprive Lone Star College of its right to engage counsel and have that counsel manage its litigation. Thus, monetary relief alone would be insufficient to make Lone Star College whole.

135.   Additionally, denial of the requested injunctive relief will inflict greater harm upon Lone Star College than would be inflicted upon Moates. As set forth above, Lone Star College is a taxpayer-funded entity. Causing Lone Star College to defend against Moates' claim in an improper venue will needlessly expend those resources.

136.   Lone Star College will also be harmed because Moates is unlikely to be able to compensate it for its attorneys' fees—an entitlement that Lone Star College should be able to enjoy as a matter of law.

137.   Issuance of a temporary restraining order also serves the public interest. It upholds principles favoring parties' freedom to contract and dissuades against blatantly ignoring those rights. Balancing the equities and other factors, including the significant irreparable harm Lone Star College faces without the requested relief and the lack of harm to Moates from entry of the requested relief, it is clear that issuance of injunctive relief will serve the public interest.

138.   A temporary restraining order is necessary to maintain the status quo during the pendency of Lone Star College's request for temporary injunctive relief. *See In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (defining the status quo as "the last, actual, peaceable, non-contested status which proceeded the pending controversy"). Status quo in this case refers to the time when Lone Star College and Moates formed their agreement.

139.   Finally, Lone Star College's application will show it has demonstrated the elements necessary to obtain injunctive relief: (1) stating a cause of action against Moates; (2) establishing probable right to the relief sought; and (3) demonstrating a probable, imminent, and irreparable injury in the interim. *See Bui v. Dangelas*, No. 01-18-00790-CV, 2019 WL 7341671, at *1 (Tex. App.—Houston [1st Dist.] Dec. 31, 2019, no pet.) (mem. op.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)).

**A.  Cause of Action.**

140.   As set forth above, Lone Star College has clearly stated a cause of action against Moates: breach of contract.

**B.  Probable Right to Relief.**

141.   It is probable that Lone Star College will recover from Moates after a trial on the merits because Lone Star College has standing and has provided evidence tending to sustain its causes of action against Moates. Lone Star College is not required to prove that it will ultimately prevail at trial. *See Patel v. St. Luke's Sugar Land P'ship, L.L.P.*, 445 S.W.3d 413, 419 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *Walling*, 836 S.W.2d at 58). Rather, Lone Star College is merely required to allege a cause of action and present evidence that tends to sustain that cause of action. *See LasikPlus of Tex., P.C. v. Mattioli*,

418 S.W.3d 210, 216 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *City of Dallas v. Brown*, 373 S.W.3d 204, 209 (Tex. App.—Dallas 2012, pet. denied).

142.    The pleadings and evidence contained herein establish that Moates breached or repudiated the agreement between him and Lone Star College. Thus, Lone Star College has met its burden to state a cause of action against Moates and establish a probable right to relief.

### C. Immediate, Irreparable Harm.

143.    If Lone Star College's application is not granted, the harm that will result will be imminent and irreparable. Indeed, Lone Star College will have no adequate remedy at law because it is being deprived of its ability to enjoy the benefit of its bargain. Moreover, the harm that may result is largely unknown and immeasurable. It is impossible to know what will transpire due to Moates' failure to uphold his end of the bargain, namely to file and litigate in Harris County.

144.    Moreover, by failing to allow Lone Star College to engage the representative that it wishes to represent it with the claims asserted by and against Moates, Moates is denying Lone Star College of its right to engage counsel.

### D. Request for Temporary Restraining Order

145.    For all these reasons, Lone Star College respectfully requests that the Court enter a temporary restraining order against Moates ordering that:

    a. Moates and those persons acting in active concert with him who receive actual or constructive notice of the order by personal service or otherwise, are restrained from:

        i. Litigating in a venue contrary to the agreement with regard to a claim of breach of contract or regarding the agreement;

     ii.  Contacting Lone Star College personnel, including members of its Board of Trustees, regarding claims alleged or asserted by Moates and for which Lone Star College has appointed outside counsel (except in places and at times where members of the public may comment); and

     iii.  Destroying, modifying, or altering in anyway any communications by and between Moates and any third party regarding Lone Star College and/or his alleged claims against Lone Star College.

## E.  Request for Temporary Injunction Hearing

146.    Lone Star College requests that the Court set its request for a temporary injunction for hearing, and after the hearing, issue a temporary injunction against Moates with the same scope of restrictions identified in Paragraph 144 herein.

## F.  Request for Permanent Injunction

147.    Lone Star College further requests that the Court set its request for a permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction against Moates with the same scope of restrictions identified in Paragraph 144 herein.

## VIII.   Verification

148.    Lone Star College attaches the verification of Nancy Molina in support of its Application for Injunctive Relief.

## IX.    Bond

149.    Lone Star College is willing and able to post an appropriate bond.

## X.    Conditions Precedent

150.    All conditions precedent necessary to the prosecution of this suit have been performed, have occurred, or have been waived.

## XI.    Request for Attorneys' Fees

151.    Pursuant to TCPRC 38.001, Lone Star College requests that it be granted its reasonable and necessary attorneys' fees associated with the prosecution of its claim against Moates for breach of contract.

## XII.   Jury Demand

152.    Lone Star College hereby demand a trial by jury.

## XIII.   Prayer

For these reasons, Lone Star College System District prays that the Court grant in all things its Application for Temporary Restraining Order, set a hearing on its Application for Temporary Injunction, cite and require Defendant Michael S. Moates to appear and answer and, on final trial, enter a final judgment against Defendant Michael Moates as follows:

a.    injunctive relief as set forth herein;

b.    all actual damages;

c.    prejudgment interest as provided by law;

d.    reasonable attorneys' fees, costs, and expenses;

e.    post-judgment interest as provided by law;

f.    all costs of court; and

g.    for such other and further relief, both general and special, legal or equitable, to which Lone Star College may show itself to be justly entitled.

Respectfully submitted,

GRAY REED & MCGRAW LLP

By:   */s/ Stephen J. Quezada*
     Stephen J. Quezada
     Texas Bar No. 24076195

squezada@grayreed.com
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
T:  (713) 986-7215
F:  (713) 730-5985

**ATTORNEY FOR PLAINTIFF**

8/31/2021 2:33:36 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 56829313
By: System user, TexFile
Filed: 8/31/2021 2:33:36 PM

Pgs-7

TRORX
STBNX
CASO

Cause No. _2021-55140_____

| | | |
|---|---|---|
| LONE STAR COLLEGE SYSTEM DISTRICT, | § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| v. | § § | OF HARRIS COUNTY, TEXAS |
| MICHAEL S. MOATES, | § § | |
| *Defendant.* | § § | _333rd_ JUDICIAL DISTRICT |

## Temporary Restraining Order

Before the Court is Lone Star College System District's Application for Injunctive relief, seeking a temporary restraining order against Defendant Michal Moates and those with which he may be in active concert. After considering the application, the Court is of the opinion that a Temporary Restraining Order should issue and finds as follows:

1.  In 2015, Moates started taking courses at Lone Star College. He also started claiming discrimination based on disability with regard to those courses.

2.  In January 2016, Moates contacted Lone Star College's Office of General Counsel. He alleged discrepancies with accommodations under the Americans with Disabilities Act ("ADA").

3.  Moates registered for two courses in the summer of 2021: (1) BIOL 1322 ("Nutrition") and (2) BIOL 2404 ("Anatomy & Physiology").

4.  On July 15, 2021, Moates submitted an application for accommodations for his Anatomy & Physiology course.

5.  Moates did not believe that he was being accommodated and therefore filed filed an Original Petition in Denton County District Court on July 29, 2021.

4833-8636-0313.1

6.     Moates filed an Amended Petition on August 5, 2021. Moates alleged that the Anatomy & Physiology professor was not providing him with accommodations he needed to complete assignments, and asserted various claims based on that.

7.     Moates sued Lone Star College and seven Lone Star College faculty and staff members for violations of the Texas Biometric law, Americans with Disabilities Act, Rehabilitation Act, Texas Constitution, Family Educational and Privacy Rights Act, Texas Deceptive Trade Practices Act, and the tort of Intentional Infliction of Emotional Distress.[1]

8.     Moates claimed that Lone Star College discriminated against him based on a myriad of disabilities: ADHD, Sleep Apnea, Anxiety, Insomnia, Depression, Asthma, and Dysgraphia. He also claimed that Lone Star College was obtaining biometric data (e.g., facial recognition) in violation of Texas law.

9.     Counsel for Lone Star College informed Moates that he had been engaged to represent Lone Star College regarding the claims asserted by him and requested that future communications be directed to him.

10.     Moates responded alleging First Amendment violations and threatening to go to the media.

11.     Moates followed up to his prior email with threats of bar charges, criminal contempt, and filing more claims.

12.     On August 10, 2021, Lone Star College removed his lawsuit to the United States District Court for the Eastern District of Texas, Sherman Division. The case was assigned civil action no. 4:21-cv-00631.

13.     That same day, Moates stated the he intended to seek remand and wanted to know if Lone Star College was interested in discussing his demands.

---

[1] *Id.*

2

14.     During discussions with Moates regarding his lawsuit, Moates revealed that he had submitted a complaint to the Texas Higher Education Coordinating Board ("THECB"). The THECB informed Moates that it did not investigate the type of complaint he submitted. Moates also noted that he believed he had also submitted an additional complaint with the Department of Justice but did not appear to have done so after all.

15.     Lone Star College made the decision to resolve with Moates. Moates and Lone Star exchanged offers and counteroffers.

16.     Moates bargained to withdraw from the Anatomy & Physiology course, in which he had not completed assignments, and wanted to remain in the Nutrition course, in which he stated he had an "A." Moates sought to garner reassurances from Lone Star College that he would in fact keep the "A" score. Specifically, Moates claimed that he had an eating disorder that prevented him from disclosing what he ate because of the anxiety it caused him to make such a disclosure.

17.     Lone Star College declined to make any such reassurance because it does not bargain grades, course work, or course outcomes. Lone Star College is serious about allowing its professors to structure and manage their courses. It is also serious about requiring students to achieve their own successful outcomes by working and using the tools and resources available to them at the college. Course work and scoring are left solely to the professor and are based on student performance and timely completion of course work.

18.     Notwithstanding the foregoing, Moates and Lone Star College reached an agreement about how to resolve the lawsuit and his claims, and memorialized the agreement.

19.     Moates agreed to the above, and all other terms, and executed the agreement on August 13, 2021. Lone Star College executed the release on August 18, 2021.

20.     The agreement requires that Moates execute a supplemental that is not based on any particular course outcome.

3

21.     Next, Lone Star prepared dismissal documents and emailed them to Moates for his review and approval. Moates gave Lone Star College permission to sign and file a joint stipulation of dismissal with prejudice. Lone Star College advised Moates that it would proceed to file. Moates received a copy of the filing by ECF. Moates received a copy of the filing email. Moates also received a hard copy of the filing by mail.

22.     Then, on August 20, 2021, Moates took issue with the score he received in his Nutrition course and reverted to his usual position: asserting discrimination based on a disability. This time, an eating disorder.

23.     Moates took the positions that he would not "sign the second agreement until [the Nutrition score] was resolved."

24.     On August 24, 2021, Moates was advised that if he was displeased with the outcome of the course, he should follow Lone Star College's procedure for appealing it.

25.     On August 24, 2021, Moates submitted a grade appeal, challenging his score in the Nutrition course.

26.     Moates also advised that he was gearing up for litigation and that he planned to file a new lawsuit, and complaints with the OCR, THECB, and the Department of Justice. He also advised that once he files, he would not be negotiating. Further, Moates threatens that he will go to the media and name Lone Star College, and six of its employees as defendants.

27.     Lone Star College responded that it cannot do anything regarding the outcome of the Nutrition course by way of some claim negotiation. Because of Moates' contention that he intended to sue, Lone Star College advised that it would counterclaim for breach of contract.

28.     On August 24, 2021 at 8:39 p.m., Moates advised that he intended to reach out to the ACLU and was prepared to fight all the way to the Supreme Court. He stated,

4

"respectfully bring it on" and advised that he "can go out gracefully, or [that he] could go out fighting...."

29.     Then, Moates apparently had a realization that the score he was complaining about was actually a "B" and not a "C."

30.     He also made new demands of Lone Star College, directly to Lone Star College personnel and not to counsel for Lone Star College, in order for him to accept a "B" score in the Nutrition class.

31.     Moates then raised an issue with getting his transcripts and urged that he wanted a guarantee that his "B" score would remain. But as Lone Star College had advised, it does not bargain course outcomes in litigation. Moates dug in and refused to sign the supplemental release that he had already promised to sign.

32.     The Dean of Instruction notified Moates that the "B" score was final.

33.     Moates, however, wanted a contractual agreement regarding the course outcome. Again, Lone Star does not bargain course outcomes and rejected Moates' attempt to do just that.

34.     Unable to have his grade changed, Moates begins to email Lone Star College's Board of Trustees.

35.     On August 26, 2021, Moates emailed Lone Star College's Board of Trustees to threaten sending a press release to 600 members of the media, every college president and chancellor in Texas.

36.     On August 27, 2021, Moates notified Lone Star College that he intended to file a motion to set aside the judgment in the federal case, despite the case having ended based on the joint stipulation of dismissal. Moates also notified Lone Star College that he intended to file a motion for sanctions contending that his signature had been forged. Moates did so that same day.

37.     Moates' breach is causing and will cause immediate and irreparable harm to Lone Star College. Lone Star College is a taxpayer funded institution and its resources are limited. Moates' continuous vexatious litigation is causing Lone Star College to expend its resources and time in a manner that harms its purpose. Such damage is immediate and irreparable because Moates is not likely able to satisfy a judgment, including an award of attorneys' fees. Moates has moved to proceed as a pauper in litigation that he himself has filed. He did so in Michael Moates v. Facebook Inc., et al; Civ. A. No. 4:2020-cv-00896; In the United States District Court for the Eastern District of Texas, and he did so in the litigation he filed against Lone Star College while it was pending in Denton County District Court (Cause. No. 21-6417-362).

38.     This lawsuit is necessitated because of Moates' actions. Namely, Moates' request to have it invalidated. The parties agreed, however, that venue for any suit regarding the agreement would be Harris County, Texas. Moreover, Moates continues to contact Lone Star College personnel to assert allegations regarding his claims and to make demands to settle those claims. Lone Star College has appointed outside counsel to represent it and advised Moates to go through its outside counsel. As noted above, Moates has repeatedly not respected the attorney-client relationship.

39.     Further, Lone Star College provided sufficient evidence that Moates has engaged in bad faith tactics, and that such bad faith tactics are part of a pattern and practice of Moates.

40.     Lone Star College has established that it has stated a viable cause of action against Moates, a probable right to relief on its claim for breach of contract, and that immediate irreparable harm is imminent/is occurring. The facts in support of this finding are set forth above.

4833-8636-0313.1

Therefore, in light of the above findings, the Court GRANTS Lone Star College's Application for Injunctive Relief and ORDERS that Moates, and those with which he is in active concert, are enjoined as follows:

~~i. Litigating in a venue contrary to the agreement with regard to a claim of breach of contract or regarding the agreement;~~

ii. Contacting Lone Star College personnel, including members of its Board of Trustees, regarding claims alleged or asserted by Moates and for which Lone Star College has appointed outside counsel (except in places and at times where members of the public may comment); and (specifically any pending claims of litigation, either in Court or before any administrative body)

*And any communications made during the grade appeal instituted on 8/27/21 or related to the civil rights complaint submitted on 8/30/21.*

iii. Destroying, modifying, or altering in anyway any communications by and between Moates and any third party regarding Lone Star College and/or his alleged claims against Lone Star College.

It is further ORDERED that Lone Star College shall place a bond amount of $ _100.00_____ in the registry of the Court.

It is further ORDERED that Lone Star College's Application for Temporary Injunction shall be heard on _____ September 9, 2021 at _____ 1: 30 p .m.

It is further ORDERED that the Clerk shall enter this Order.

SIGNED this the _1st___ day of ___September___, 2021 at _11:12 a.m.____.m., at Houston, Texas.

Signed:
9/1/2021

_____
Presiding Judge

7

8/31/2021 2:39:24 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 56831125
By: HILL, MARCELLA D
Filed: 8/31/2021 2:39:24 PM

Pgs-2

XDISX

Cause No. 2021-55140

| | | |
|---|---|---|
| LONE STAR COLLEGE SYSTEM DISTRICT, | § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| v. | § § | OF HARRIS COUNTY, TEXAS |
| MICHAEL S. MOATES, | § § | |
| *Defendant.* | § § | 333RD JUDICIAL DISTRICT |

---

### Order on Motion for Expedited Discovery

---

Before the Court is Plaintiff Lone Star College System District's Motion for Expedited Discovery. After considering the Motion, the Court is of the opinion that it should be and therefore is, in all things, GRANTED. It is therefore ORDERED that:

(1) Lone Star College is granted leave to engage in expedited discovery for the limited purpose of preparing for the hearing on its application for temporary injunction;

(2) Lone Star College shall serve no more than fifteen (15) requests for production and ten (10) interrogatories on Moates by sending the discovery via email, and to which Moates must confirm receipt;

(3) Moates shall respond to Lone Star College's requests for production, answer Lone Star College's interrogatories, and produce all responsive documents within five (5) calendar days of service thereof and such responses shall be made via email delivery on the due date;

(4) Moates shall provide substantive and meaningful responses to Lone Star College's discovery requests; and

(5) Lone Star College is granted leave to notice, schedule, and take the in-person oral deposition of Moates in ~~Houston~~ Dallas, Texas ~~upon notice of at least three (3) calendar days.~~ upon agreement by the parties as to time and place, to take place prior to the TI hearing.

1

4848-7324-3385.1

The above requests and time for deposition are without prejudice to further discovery conducted after the hearing on Lone Star College's Application on Temporary Injunction.

It is so ORDERED.

Signed this the _____ day of _____, 2021, at Houston, Texas.

Signed:
9/1/2021

_____
Presiding Judge

4848-7324-3385.1

Wednesday, September 1, 2021

Lone Star College System District v Michael Moates
CAUSE NO. 2021-55140

Your Honor:

I am filing this letter to seek reconsideration of the TRO order that was adjudicated in court today. When we spoke, it was my understanding that you had said you would not seek to enjoin me from filing litigation in a different venue because there was no authority to do so.

But when the written TRO came out that line. The first request for relief was still there and not crossed out. As of now, the order requires me to not litigate current pending cases. I am asking for an amended order to procced in the other venues. Having this in place creates an issue of following court deadlines. My request would be to strike that line.

Michael Moates
817-999-7534
michaelsmoates@gmail.com

**STATE OF TEXAS**

**HARRIS COUNTY DISTRICT COURT – 333rd JUDICIAL DISTRICT**

| | |
|---|---|
| LONE STAR COLLEGE SYSTEM | Case No.: 202155140 |
| V. | |
| MICHAEL MOATES | **MOTION TO DISMISS** |

1. On 29 July 2021, the Defendant filed a case in the Denton County District Courts under various claims of state and federal statutes.

2. After avoiding service, the Plaintiffs were finally severed on 5 August, and in the amended complaint on 11 August 2021.

3. On 10 August 2021, the Plaintiff (Lone Star College System) removed their case to federal court and represented that other Defendants had not yet been served (Although this was false).

4. On 13 August 2021, they coerced the Defendant into signing an agreement that he did not agree with slowing responding and delaying communication to push the Plaintiff in to a bad position. Furthermore, they refused to withdraw him from the class as requested. Also, when the signature on the agreement was affixed, it was the Defendants belief that the Plaintiff indented to follow the law. They did not and they did not make a good faith effort to communicate to resolve the accommodations issues.

5. On 17 August 2021, the Plaintiff filed a stipulation of dismissal. The signature of the Defendant was contingent on receiving the "final signature" of the executed document from

Steven Head. The Plaintiffs without permission choose to file the stipulation of dismissal prior to the Defendant receiving the final signature, therefor it is a forgery and is invalid.

6. The Defendant filed in federal court to set aside the judgement and declare the agreement invalid on 27 August 2021.

7. On 30 August 2021, the Defendants filed a new case in Harris County where they allege a breach of contract.

8. In the petition from page 3-39 the Plaintiff alleges various wrongdoing by the Defendant. All this information is in violation of Rule 45 of TRCP. The rule states that pleadings should a) be by petition and answer; b) Consist of a statement in plain in concise language of the Plaintiffs cause of action or the Defendants grounds of defense. That an allegation be evidentiary or be of legal conclusion shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole; and contain any other matter which may be required by law or rule authorizing or regulating any particular action or defense. A Motion to Strike is forthcoming.

9. In their petition, Lone Star College alleges one cause of action, Breach of Contract. However, they state that "Moates…" "repudiated it." That is simply inaccurate, in fact, the exact opposite took place, the Defendant notified that there was no repudiation.

10. Furthermore, even if the Defendant did refuse to sign the supplemental agreement (not stating or waiving any legal rights), the government cannot under the First Amendment and the Compelled Speech Doctrine force the Defendant to make any written or verbal speech. Furthermore, under the Unconstitutional Conditions Doctrine, they cannot make contractual terms that violate the constitution for any benefit including the withdrawal, monetary, certain type of dismissal, etc. This applies.

11. They claim, that "Moates has also breached the agreement by seeking to invalidate it and set aside the "judgment" in the lawsuit that the agreement resolved." A couple things here must be taken at face value. First, the government cannot under the First Amendment and the Compelled Speech Doctrine force the Defendant cannot force or restrict the speech of an individual in court or otherwise. Furthermore, under the Unconstitutional Conditions Doctrine, they cannot make contractual terms that violate the constitution. The only reason to set aside the judgement was because a signature was affixed on a document prior to receiving consent. Now if the Plaintiff would like to request the Defendants signature in good faith it is more than welcomed. Finally, setting aside a judgement that was filed prior to the contract signature is not applicable because the government cannot force speech on an individual. This is simply about validity of a signature.

12. Furthermore, the Texas Supreme Court ruled that the legislature ensured the right to **"to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury"** under the Texas Citizens Participation Act. See IN RE PRAVEEN PANCHAKARLA, RELATOR. ON PETITION FOR WRIT OF MANDAMUS. Therefore, forcing a signature on any agreement would be an unconstitutional condition. Furthermore, it would be a coercion of contract.

3

1   WHEREAS THE DEFENDANT PRAYS THIS COURT ISSUES A MOTION TO DISMISS.

2

3

4
                                                    /s/ Michael Moates
5                                                       **Michael Moates**
                                                **2700 Colorado Boulevard #1526**
6                                                      **Denton, TX 76210**
7                                                        **(817) 999-7534**
                                                **michaelsmoates@gmail.com**
8

9   **CERTIFICATE OF SERVICE**
    This document emailed to Defendant's counsel.
10
                                                    /s/ Michael Moates
11
12                                                      Michael Moates
13                                              2700 Colorado Boulevard #1526
14                                                     Denton, TX 76210
15                                                       (817)999-7534
16                                              michaelsmoates@gmail.com
17
18
19
20
21
22
23
24
25
26
27
28

4



**LONE STAR COLLEGE**

Valentina E. Dassey
Assistant General Counsel
Office of the General Counsel
5000 Research Forest Drive
The Woodlands, TX 77381-4356
Phone: 832.813.6843
Fax: 832.813.6656
Valentina.E.Dassey@LoneStar.edu
LoneStar.edu

January 20, 2016

*Via Email Delivery mmoates@my.lonestar.edu and michaelsmoates@gmail.com*

*Via CMRRR: 7009 2820 0001 1318 5748*

Mr. Michael Moates
817 Wesleyan St.
Apt. 414
Fort Worth, TX 76105

**Re: Office of the General Counsel Recommendation**

Dear Mr. Moates,

This letter concludes the Lone Star College Office of the General Counsel's (OGC) review into the two issues you raised with our office on January 11, 2016. Your call was directed to our office after you contacted College Presidents, Deans, and the Chancellor's Office seeking help with ongoing complaints you filed regarding alleged discrepancies with Americans with Disabilities (ADA) accommodations for Fall 2015 and Winter 2015-2016 classes.

On January 11, 2016, you called our office at approximately 10:00 a.m. Two OGC attorneys talked with you for a little over one hour. During this conversation you alleged that you had two pending issues that you felt were not being properly addressed. We note that we had several subsequent telephone conversations following your initial call.

The first issue regarded an alleged failure to give you needed accommodations for your Fall 2015 classes. You stated to OGC that you had attempted repeatedly, beginning in October 2015, to request accommodations for your Fall 2015 semester. You stated that October 2015 was the first time you enrolled in classes at Lone Star College. You stated that you attempted to request accommodations by sending numerous emails to the following email address: OnlineAdvisor@LoneStar.edu. You stated that you received no response from your numerous requests to OnlineAdvisor@LoneStar.edu. You stated that other than these emails you made no other attempts to request accommodations via the online advisors. At the end of the Fall 2015 semester, you initiated a grade appeal at Lone Star College-Tomball for at least one of your classes, basing your grade appeal, in part, on the lack of accommodations. You also initiated a student civil rights complaint regarding this same issue, which is being handled and investigated by Ann Johnson. You called OGC because you were unhappy with the grade appeal, which was unsuccessful. You were seeking, at the very least, to have your grades changed or have classes dropped.

The second issue regarded a Government class you took during the Winter 2015-2016 semester. You stated that on or about December 14, 2015, you contacted the Disability Services Office at Lone Star College-Montgomery and requested accommodations. You were granted extended test time. You allege that during one of your multiple-choice exams for the Government class you were not given extended time. You alerted your professor after the exam that you wanted to re-take the

test with extended time. You stated that the professor gave you another exam, but it was in an essay format, which you were unhappy with. Instead, you stated you wanted to either re-open the original exam or take another multiple-choice exam. You stated to OGC that you understood that academic integrity was a concern and that re-opening the original exam would not have been reasonable. You stated, however, that if you would have been given the opportunity to take another multiple-choice exam, you would have been satisfied. You, again, initiated a second grade appeal. You were unhappy with this second grade appeal because it was also unsuccessful.

You reached out to OGC so that we could review both grade appeals. You were asked to produce documents substantiating your allegations. For the first issue, you were asked to produce the numerous emails that you sent to OnlineAdvisor@LoneStar.edu. OGC wanted to verify that you made an accommodation request so that any issues from your request could be resolved. You agreed to produce the emails, which you stated were sent some time in October 2015. For the second issue, you were asked to produce any additional documents that could be helpful.

On Saturday, January 16, 2016, five days after you initially contacted OGC, you produced four emails (attached). According to you, these were the emails that you sent to OnlineAdvisor@LoneStar.edu requesting accommodations during Fall 2015. There are a few issues with the emails you produced. First, each of the four emails is **FROM:** OnlineAdvisor@LoneStar.edu, **TO:** Michael Moates <michaelsmoates@gmail.com>. It is difficult to reconcile how your request for accommodations was sent to you from Online Advisor. It seems implausible that Online Advisor would be requesting accommodations to you. Second, the third email you produced titled "Michael Moates Accommodations" is dated Tues, Jan 16, 2015 at 2:07 PM. According to you, you were not enrolled at the College in January 2015. Indeed, according to you, all of the requests for accommodation occurred during and after October 2015. But even more confusing is that this email is dated Tues, Jan 16, 2015. This also seems implausible because January 16, 2015 was a Friday, not a Tuesday.

As you can see, these irregularities make it impossible to confirm that you actually requested accommodations when you said you did. Moreover, to be extra diligent, we requested that our Office of Technology Services (OTS) review emails sent to OnlineAdvisor@LoneStar.edu during October 2015 from the email addresses you gave us. OTS was unable to find any emails that were sent from you to OnlineAdvisor@LoneStar.edu regarding accommodation. Again, we were unable to verify that you actually requested accommodations. As such, we will recommend that the Dean of Student Instruction's decision regarding your first grade appeal stand.

The results of your second grade appeal will also remain undisturbed. We were able to verify that your Government Professor did in fact offer you a multiple-choice exam with extra allotted time on three separate occasions (attached and highlighted). You chose to take the exam in essay format. You agreed that had you been offered a multiple choice exam you would have been happy with the outcome of this class. Because this did occur (you were given the option of extra time on a second multiple-choice exam), our recommendation is that this second grade appeal also stand.

OGC spent seven working days, from the date you contacted our office, diligently trying to verify your allegations. We were unable to find any grounds for making different recommendations.

We remind you that dishonesty is a violation of the student code of conduct. We also remind you that fabrication of evidence is a serious violation and can have serious repercussions on your academic record. At this time, we will forward this letter to you, Dr. Lee Ann Nutt and Dr. Rebecca Riley. This concludes our review.

Questions concerning this review should be addressed to Val Dassey at the Office of the General Counsel at Valentina.E.Dassey@lonestar.edu or at (832)813-6843. Moreover, in the future, we recommend that you direct questions and concerns regarding your accommodations to Disability Services Office Manager, Iris Hansen, at Iris.D.Hansen@lonestar.edu or at (281)290-1869. You stated to OGC that you previously communicated with Ms. Hansen and are comfortable with her.

Respectfully,

Valentina E. Dassey
Assistant General Counsel
Office of the General Counsel
Lone Star College System

cc:     Mario K. Castillo, General Counsel
        Dr. Lee Ann Nutt, President of Lone Star College Tomball
        Dr. Rebecca Riley, President of Lone Star College Montgomery

Enclosures (2):

1. Email correspondence from Michael Moates to OGC attorney, Val Dassey (2 pages)
2. Email correspondence between Michael Moates and Professor Lovell (9 pages)

**Dassey, Valentina**

| | |
|---|---|
| **From:** | Michael Moates <michaelsmoates@gmail.com> |
| **Sent:** | Saturday, January 16, 2016 4:23 AM |
| **To:** | Dassey, Valentina |
| **Subject:** | Michael Moates Email's |

Val I have attached the email I was able to find. Bear in mind that I can not forward the attachment but I believe you already have the documentation.

———— Forwarded message ————
From: OnlineAdvisor@LoneStar.edu
Date: Mon, Oct 19, 2015 at 4:31 PM
Subject: Michael Moates Disability
To: Michael Moates <michaelsmoates@gmail.com>

Hello,

My name is Michael S. Moates. I want to put my 504 plan into place. Please email me back or call me at 817-880-4326. I need to get these put into place ASAP. I have attached a copy of my documentation from the Child Study Center and Dr. Julian Haber.

Respectfully,

Michael Moates

———— Forwarded message ————
From: OnlineAdvisor@LoneStar.edu
Date: Mon, Nov 9, 2015 at 8:44 PM
Subject: Michael Moates 504
To: Michael Moates <michaelsmoates@gmail.com>

Hello,

I have been trying to get a hold of somebody for some time now trying to get my accommodations put into place. I really need somebody to help me I have attached the documentation and would really much appreciate hearing from somebody ASAP. Not having these accommodations in place is directly impacting my great because I need these for my disability.

———— Forwarded message ————
From: OnlineAdvisor@LoneStar.edu
Date: Tues, Jan 16, 2015 at 2:07 PM
Subject: Michael Moates Accommodations
To: Michael Moates <michaelsmoates@gmail.com>

Hello,

My name is Michael Moates. I have some accommodations I need to discuss with someone. Please email me back or call me at 817-880-4326. I need to get these put into place ASAP.

Respectfully,

Michael Moates

———— Forwarded message ————
From: OnlineAdvisor@LoneStar.edu

1

Date: Sat, Nov 28, 2015 at 8:37 AM
Subject: Michael Moates 504 Plan
To: Michael Moates <michaelsmoates@gmail.com>

Hello,

I am really starting to get irritated at been trying to contact you guys recording my accommodations for some time now I nobody is going communication back with me. I am really frustrated that this is not been put into place within reasonable matter time and I am about ready to file something with the Department of Education of somebody does not get back in communication with me. I have again attached the documentation.

Respectfully,

Michael Moates
(817)-880-4326

2



On Dec 29, 2015, at 3:02 PM, Lovell, Darrell A <Darrell.A.Lovell@lonestar.edu> wrote:

Michael,

After speaking with my department chair, who is copied here, I have uploaded your essay exam. It is four questions worth 25 points each.

You will need the password Matthew248 to enter the exam. If you provide this password to any other student it will be considered cheating and I will apply a zero for the exam. Once entered you will have 90 minutes to complete the exam and one chance to do it. If there is an issue with D2L exit the exam immediately, do not proceed, notify me first and then call tech support. If you cannot see the exam notify me immediately.

The exam is available and must be completed by 3PM Wednesday 12/30. Failure to meet this deadline will result in me assigning the grade on the previous exam.

Once completed you will receive the higher of the two grades of this exam and the first one and the grade will be assigned.

Regarding your appeal, I have no effect on that process or your abilities/options for it. Therefore I will not provide anything for that.

1

Darrell Lovell
Adjunct Instructor, Lone Star College
Government
Darrell.A.Lovell@lonestar.edu

**From:** Michael Moates <michaelsmoates@gmail.com>
**Sent:** Tuesday, December 29, 2015 10:33 AM
**To:** Lovell, Darrell A
**Cc:** Benifield, Annie J
**Subject:** Re: Michael Moates Accommodations

Sir,

After speaking with Dr. Nutt today, I have decided I would like to take the essay exam format you offered to me earlier this week. I will take the higher of the two grades as you offered. However, if I do worse on the essay exam I still would like to have it in writing that I have the right to appeal the grade due to the fact that the original accommodations were not put in place for the original exam and that by taking this option I am not waiving that right. I know that this was not intentional but I want to protect myself and my grade as much as possible. Per Dr. Nutt, I will be speaking with the VP of Student Services after the break.

Respectfully,

Michael Moates

On Tue, Dec 29, 2015 at 7:25 AM, Lovell, Darrell A <Darrell.A.Lovell@lonestar.edu> wrote:
Ok. Be sure to complete the work moving forward this week.

Darrell Lovell
Assistant Professor, Political Science
Lone Star College University Park
Darrell.a.lovell@lonestar.edu
Sent from my Sprint Samsung Galaxy S® 5
y>

——— Original message ———
**From:** Michael Moates <michaelsmoates@gmail.com>
**Date:** 12/29/2015 1:21 AM (GMT-06:00)
**To:** "Lovell, Darrell A" <Darrell.A.Lovell@lonestar.edu>, "Benifield, Annie J"
<Annie.J.Benifield@lonestar.edu>
**Subject:** Re: Michael Moates Accommodations

Good Morning,

I have to tell you that this is not the first time this has happened. I would like to consult the disability services department as that is my legal right and will get back to you after that. At this point, you are changing what you told me I could do and now I want to cover my bases. I have in writing my accomadations which were not followed. This makes it a civil service matter. I have a call scheduled with President Nutt after the break for a previous issue of accomdations I will speak with her then regarding this issue. Averaging the grades would possibly make my

2

grade lower than it is now which is not right. Having to take a different exam is not what is supposed to be done. This happened because the correct settings were not input into D2L and I have that in writing from D2L support. I also spoke to the the gentlemen who you sent me the email and he said I cant redo that attempt but you could open it up and allow me to finish with my answer saved.

At this point, I would like the grade to sit still until after I have had a chance to consult with disablitiy services, Dr. Nutt, and the Texas Higher Coordinating Board regarding this issue as my rights were clearly violated.

Respectfully,

Michael Moates

On Mon, Dec 28, 2015 at 1:37 PM, Lovell, Darrell A <Darrell.A.Lovell@lonestar.edu> wrote:
Michael

I consulted my department chair Dr. Benifield today as well as our dean and here is what they have advised....

You have two options

1. I make you a different multiple choice exam and you take the higher of your two scores.

2. I average your 1st exam and final and apply that as your exam two grade.

Let me know which you choose by 5PM today. If you choose option 1 I will have to write the exam up and it will be ready for tomorrow and you will have to complete it by Tuesday evening at 9PM.


Darrell Lovell
Assistant Professor, Political Science
Lone Star College University Park
Darrell.a.lovell@lonestar.edu
Sent from my Sprint Samsung Galaxy S® 5
y>


———— Original message ————
From: Michael Moates <michaelsmoates@gmail.com>
Date: 12/27/2015 10:14 PM (GMT-06:00)
To: "Lovell, Darrell A" <Darrell.A.Lovell@lonestar.edu>
Subject: Re: Michael Moates Accommodations

How many essay questions would there be or would it be like a written essay?

Sent from my iPhone

On Dec 27, 2015, at 9:31 PM, Lovell, Darrell A <Darrell.A.Lovell@lonestar.edu> wrote:

3

That is contridictory to what I have been told on multiple occasions by tech support. I just spoke with Mark with tech support and he confirmed that an attempt cannot be re-opened, I could allow you another attempt but you would have to do it from scratch. I have asked him to send me an email that I will forward to you to confirm or he said to call them and ask for him by name.

As for me not liking what you write, I grade everything objectively. That is my job. If you answer the question correctly and fully you would get the credit you earn.

You believe you should be given the same exam. I believe it is unfair to others to give any student an exam they have already seen regardless of circumstance. I will provide you with an exam, even a multiple choice exam if you choose, that you will have 90 minutes to complete. The exam would be fair and on the same material.

If I allow you to take an exam you have already answered all the questions for and had multiple days to consider it would be disingenious to the assessment and academic process.

Darrell Lovell
Assistant Professor, Political Science
Lone Star College University Park
Darrell.a.lovell@lonestar.edu
Sent from my Sprint Samsung Galaxy S® 5
y>
-------- Original message --------
From: Michael Moates <michaelsmoates@gmail.com>
Date: 12/27/2015 9:14 PM (GMT-06:00)
To: "Lovell, Darrell A" <Darrell.A.Lovell@lonestar.edu>
Subject: Re: Michael Moates Accommodations

Here is my response to your previous email:

I spoke to the service desk and they informed me what you were told is false. This possible to be opened back up by the teacher. Also, it would not get rid of my answers so I could have that extra thirty minutes. The exam can be opened back up I just got off the phone with them. "Once an exam is submitted in D2L you cannot restart it or reopen it according to LSC tech support."

What is a part of the ADA rules is the fact that I have to take the same test as everyone else but modified timing and I do have that in writing in the rules.

The reason I am so admit is because I don't want my GPA to be affected and an essay is an open ended question. You could not like what I submit and I could get a lower grade than the first exam.

Respectfully,

Michael Moates

◀

On Sun, Dec 27, 2015 at 2:16 PM, Lovell, Darrell A
<Darrell.A.Lovell@lonestar.edu> wrote:

That is fine. Here you go:


I entered your accommodations but the system, D2L, did not save them. That
was the issue. I acknowledge that issue and you will be given the chance to
take exam two with the accommodations.


However, according to the attempt logged in D2L you completed the exam
and answered all 50 questions in 42 minutes. Once an exam is submitted in
D2L you cannot restart it or reopen it according to LSC tech support.


The options we have is to take your grade or to allow you to re-take exam
two. While I acknowledge that your accommodations were not met due to a
mix up in D2L, I cannot allow you to take the same exam. You have seen the
exam and it would be unfair to allow you to take an exam that you have
already seen and had the opportunity to prepare for. While you have
accommodations, that is not part of them in my understanding.


My policy on any make up/re-take, which this will be, is to substitute that
with an essay exam. However, I will give you a new multiple choice exam, but
it will not be the same questions. The exam will cover the same material and
sections that we have gone over for exam two.


If you feel this is unfair you can speak with my department chair, Annie
Benifield (Annie.J.Benifield@lonestar.edu) or with the disability office on
campus.


Darrell Lovell
Adjunct Instructor, Lone Star College
Government
Darrell.A.Lovell@lonestar.edu
---
**From:** Michael Moates <michaelsmoates@gmail.com>
**Sent:** Sunday, December 27, 2015 2:03 PM
**To:** Lovell, Darrell A

5

**Subject: Re: Michael Moates Accommodations**

I want to keep everything in writing at this point. So I prefer if we could just email back-and-forth. I'm sorry for being so hard-core about this but my grade point average is really high and I feel like it's going to bring it down significantly.

Sent from my iPhone

On Dec 27, 2015, at 1:59 PM, Lovell, Darrell A <Darrell.A.Lovell@lonestar.edu> wrote:

My number is 832 724 7918

Darrell Lovell
Assistant Professor, Political Science
Lone Star College University Park
Darrell.a.lovell@lonestar.edu
Sent from my Sprint Samsung Galaxy S® 5
y>

——— Original message —·——
From: Michael Moates <michaelsmoates@gmail.com>
Date: 12/27/2015 1:55 PM (GMT-06:00)
To: "Lovell, Darrell A" <Darrell.A.Lovell@lonestar.edu>
Subject: Re: Michael Moates Accommodations

Sir,

With all due respect, that is not acceptable to me. As a student my rights were violated, I am supposed to be taking the same exam as everyone else. I only used 42 minutes because I wanted to go take a screen shot showing that I only received an hour. According to your own syllabus, technology issues are not acceptable excuses. I feel that the exam should be opened up with my current answers and I should be allowed to go in and finish. I mean no disrespect if that how you choose not to go I would like to contact the ADA office. I don't think having me do a different test where I could possibly get a lower score is fair nor having me redo an entire test because of technical error. I would like to contact the ADA office and I will get back with you.

Respectfully,

6

Michael Moates

On Sun, Dec 27, 2015 at 10:09 AM, Lovell, Darrell A
<Darrell.A.Lovell@lonestar.edu> wrote:
Michael

So I am back.....it looks like the system did not save the
changes. So that is what happened.

It only took you 42 of the 60 minutes to complete the exam.
So you did not need the extra time.

If you redo the exam I cannot let you take the same exam
because you have already seen it. If you take another exam it
will be an essay exam. You will have the 90 minutes but I
cannot let you take an exam you have already seen and
furthermore completed in less than the time allotted.

If you want the make up I will set it up so you can take it
tomorrow.

Darrell Lovell
Assistant Professor, Political Science
Lone Star College University Park
Darrell.a.lovell@lonestar.edu
Sent from my Sprint Samsung Galaxy S® 5
γ>

———— Original message ————
From: Michael Moates <michaelsmoates@gmail.com>
Date: 12/26/2015 10:39 PM (GMT-06:00)
To: "Lovell, Darrell A" <Darrell.A.Lovell@lonestar.edu>
Subject: Fwd: Michael Moates Accommodations

I understand its just I won't be available to take work on this
tomorrow because I will be unavailable. I was just double
checking. I mean no disrespect I just don't want to loose
credit because I couldn't be available tomorrow.

Respectfully,

Michael Moates

7

Begin forwarded message:

From: "Lovell, Darrell A"
<Darrell.A.Lovell@lonestar.edu>
Subject: RE: Michael Moates Accommodations
Date: December 26, 2015 at 10:36:44 PM CST
To: Michael Moates
<michaelsmoates@gmail.com>

Michael,

I told you I would look into it when I got back
tomorrow. I will do that. Thank you.

Darrell Lovell
Assistant Professor, Political Science
Lone Star College University Park
Darrell.a.lovell@lonestar.edu
Sent from my Sprint Samsung Galaxy S® 5
y>

------- Original message -------
From: Michael Moates
<michaelsmoates@gmail.com>
Date: 12/26/2015 10:29 PM (GMT-06:00)
To: "Lovell, Darrell A"
<Darrell.A.Lovell@lonestar.edu>
Subject: Re: Michael Moates Accommodations

Sir,

Spoke to D2L and they told me that Exam 2 had
no special access permission settings that it
was only set to an hour. Maybe it was only that
one exam.

Respectfully,

Michael Moates

On Sat, Dec 26, 2015 at 12:16 PM, Lovell,
Darrell A <Darrell.A.Lovell@lonestar.edu>
wrote:
  Michael

8

It should have given you more time.......I am
out of town and will be back tomorrow and
will look into it then.


Darrell Lovell
Assistant Professor, Political Science
Lone Star College University Park
Darrell.a.lovell@lonestar.edu
Sent from my Sprint Samsung Galaxy S® 5
y>


------ Original message ------
From: Michael Moates
<michaelsmoates@gmail.com>
Date: 12/25/2015 11:30 PM (GMT-06:00)
To: "Lovell, Darrell A"
<Darrell.A.Lovell@lonestar.edu>
Subject: Michael Moates Accommodations

Sir,

I did Exam 2 tonight but I did not have the
extension on there and it would not allow me
to stop as I only had one attempt. I did okay
but felt I could have done better if I had
longer. Please advice on what you want me to
do.

Respectfully,

Michael Moates

9

| | |
|---|---|
| **From:** | Michael Moates |
| **To:** | Stephen Quezada |
| **Cc:** | michaelsmoates@gmail.com; Molina, Nancy |
| **Subject:** | Re: [EXTERNAL] Re: READ FIRST, SORRY |
| **Date:** | Tuesday, August 24, 2021 8:42:31 PM |
| **Attachments:** | logo_a83735f8-80ca-4a7b-81ad-3201a2d49899.jpg |

Also, think about this... while I may have dismissed the previous claims and cannot bring claims against them now where in your contract does it say I can't use them for evidence in my new claims.

**From:** Michael Moates <MMOATES@my.lonestar.edu>
**Sent:** Tuesday, August 24, 2021 8:39 PM
**To:** Stephen Quezada <squezada@grayreed.com>
**Cc:** michaelsmoates@gmail.com <michaelsmoates@gmail.com>; Molina, Nancy
<Nancy.M.Molina@lonestar.edu>
**Subject:** Re: [EXTERNAL] Re: READ FIRST, SORRY

With respect Stephen, do what you gotta do. You do not intimadate me.

Let me be clear... you can do whatever you want with a counterclaim... but in the event of a breach, you get this "If Student breaches any term in this Agreement, then LSC shall not reimburse Student as described in Paragraph 4. If LSC has already reimbursed Student as described in Paragraph 4 when Student breaches this Agreement, Student shall return the Reimbursement Amount, less One Dollar ($1.00), to LSC within five (5) business days of LSC's request for the same. LSC reserves the right, and does not waive, to recover any and all other damages allowed by law or in equity."

But it will be a moral issue for your client. I will go to the press, I will file with the Dept of Ed, Dept of Justice, THECB, and speak to the board... and there will be nothing you can do about it. "Nothing in this Agreement shall be construed to restrict or prevent Student from filing a charge or complaint with any state or federal administrative agency or from participating in an investigation or proceeding conducted by such administrative agency." "Such institution, participation or cooperation by Student is expressly not considered a breach of any provision of this Agreement, including without limitation those provisions pertaining to confidentiality, non-disparagement, or cooperation."

I will reach out to the ACLU. I am prepared to fight you all the way to the Supreme Court. So think about if you want to set precdent and go on record as abusing, harassing, and violating a students civil rights.

So respectfully bring it on... its interesting you say this today because while I have not responded yet, I had a reporter email me today that I had emailed prior to our agreement asking if I would tell him my story. "Nothing in this Agreement is intended to interfere with Student's rights under federal, state or local civil rights or fair educational practice laws to institute a charge of discrimination, participate in any such agency proceeding, or cooperate in an investigation by any such agency".

**"Nothing in this Agreement is intended to interfere with Student's rights under federal, state or local civil rights"  - Guess what that means press covered under 1A, federal or state stuatues. Your language was overly broad. You say I am allowed to institute a "charge of discrimination" and I am going to do just that with every person who wants to listen.**

Now, I can go out gracefully, or I can go out fighting your choice. Your move.

---

**From:** Stephen Quezada <squezada@grayreed.com>
**Sent:** Tuesday, August 24, 2021 8:16 PM
**To:** Michael Moates <MMOATES@my.lonestar.edu>
**Cc:** Copeland, Beverly <Beverly.M.Copeland@lonestar.edu>; Molina, Nancy <Nancy.M.Molina@lonestar.edu>; Thomas, Leslieann <Leslieann.Thomas@lonestar.edu>; LSC-VDAC <LSC-VDAC@lonestar.edu>; Guevara, Alicia <Alicia.Guevara@lonestar.edu>; Allen, Christopher <Christopher.A.Allen@lonestar.edu>; Office of the Chancellor <Chancellor@lonestar.edu>; Head, Steve <Steve.Head@lonestar.edu>; michaelsmoates@gmail.com <michaelsmoates@gmail.com>
**Subject:** Re: [EXTERNAL] Re: READ FIRST, SORRY

Michael -

Nothing in your below email changes my client's position.

If you proceed with a new lawsuit, Lone Star will counterclaim for breach of contract and seek its fees.

Unlike the prior lawsuit, you won't be able to simply dismiss a lawsuit in which Lone Star has asserted a counterclaim.

Regards,

Stephen

**Stephen Quezada**
**Counsel**
Tel 713.986.7215 | Fax 713.730.5985 | squezada@grayreed.com
1300 Post Oak Blvd., Suite 2000 | Houston, TX 77056
grayreed.com | Connect with me on LinkedIn

*Board Certified - Labor & Employment Law*
*Texas Board of Legal Specialization*

CONFIDENTIALITY NOTICE: This electronic transmission and any attachments constitute confidential information which is intended only for the named recipient(s) and may be legally privileged. If you have received this communication in error, please contact the sender immediately. Any disclosure, copying, distribution or the taking of any action concerning the contents of this communication by anyone other than the named recipient(s) is strictly prohibited.

On Aug 24, 2021, at 4:02 PM, Michael Moates <MMOATES@my.lonestar.edu> wrote:

I understand but I want to be clear on a couple of things:

1. I am not signing the stipulation until this is resolved.
2. I will be talking to the Board of Trustees again
3. We are beyond an informal complaint as no one has responded
4. I will file both a grade appeal and a civil rights complaint later today
5. If we can't get this handled by the deadline I will refile my litigation, a new complaint with OCR, and THECB, and DOJ.
6. Once I file in court I will not be negotiating. We either handle this now or we go to court.
7. If we go to court I will seek to have Stephen disqualified as he is a potential witness in my case.
8. I will go to the media.
9. The new lawsuit will list the professor, the college, the DS counselor and ED, and the chair, dean, and VP.

Note I have attempted to communicate with the chair multiple times and he has never responded to me. This is a violation of LSC policy.

I am again informally asking the professor one more time… are you going to grade my submission?

DS: are you really requiring me to release diagnostic information to a professor who doesn't have a need to know?

It's important to note that the submission does not change the educational competencies because I can still sure that I'm confident in what is needed. The fact that disability services refused to call me back or communicate with me as a big problem.

The board of trustees asked for an update last time from Dr. Head, I plan to go back and let them know that you require me to release information to a professor about my diagnosed disability that she is not entitled to.

Also if we go to court I will bring up the fact that Lonestar College make no attempts to give me accommodations for my assignments. To the contrary they only addressed tests. That is not in compliance with the law.

My offer to resolve this expires on Friday. At which time I will begin preparing litigation. You can expect the formal complaints tomorrow unless the professor and I can resolve this.

Michael Moates, MA, QMHP-T, RBT, CPI
Doctor of Education Student, Fielding Graduate University

**From:** Stephen Quezada <squezada@grayreed.com>
**Sent:** Tuesday, August 24, 2021 3:47 PM
**To:** Michael Moates <MMOATES@my.lonestar.edu>; Copeland, Beverly

<Beverly.M.Copeland@lonestar.edu>
**Cc:** Molina, Nancy <Nancy.M.Molina@lonestar.edu>; Thomas, Leslieann
<Leslieann.Thomas@lonestar.edu>; LSC-VDAC <LSC-VDAC@lonestar.edu>; Guevara,
Alicia <Alicia.Guevara@lonestar.edu>
**Subject:** RE: READ FIRST, SORRY

Michael,

At bottom, your issue with the outcome of your course is not one that I can help you
with. If you do not agree with the grade, you need to follow LSC procedures for
disputing it.

Regards,

Stephen

**Stephen Quezada**
**Counsel**
Tel 713.986.7215 | Fax 713.730.5985 | squezada@grayreed.com
1300 Post Oak Blvd., Suite 2000 | Houston, TX 77056
grayreed.com | Connect with me on LinkedIn

*Board Certified - Labor & Employment Law*
*Texas Board of Legal Specialization*
<logo_a83735f8-80ca-4a7b-81ad-3201a2d49899.jpg>

CONFIDENTIALITY NOTICE: This electronic transmission and any attachments constitute confidential information which is
intended only for the named recipient(s) and may be legally privileged. If you have received this communication in error, please
contact the sender immediately. Any disclosure, copying, distribution or the taking of any action concerning the contents of
this communication by anyone other than the named recipient(s) is strictly prohibited.

**From:** Michael Moates <MMOATES@my.lonestar.edu>
**Sent:** Sunday, August 22, 2021 2:56 PM
**To:** Copeland, Beverly <Beverly.M.Copeland@lonestar.edu>
**Cc:** Molina, Nancy <Nancy.M.Molina@lonestar.edu>; Thomas, Leslieann
<Leslieann.Thomas@lonestar.edu>; LSC-VDAC <LSC-VDAC@lonestar.edu>; Guevara,
Alicia <Alicia.Guevara@lonestar.edu>; Stephen Quezada <squezada@grayreed.com>
**Subject:** [EXTERNAL] READ FIRST, SORRY

Hello all,

I wanted to send this email to you from the professor.

She says she "stand ready to work" disability services on this assignment for me.

I would like to resubmit the asignment as an example rather than my personal food choices. To be frank, food intake is diagnostic to my eating disorder and I am not comfortable sharing that. I requested accomdations in writing prior to the deadline through DS and the attorney.

I felt in this situation, it was better to be honest, than lie and submit something that was not accurate.

I did notify Counselor Quezada that I had concerns about this prior to the deadline. I called disability services prior to the deadline as well... but from there on I choose to respect Counselor Quezada's request that I communicate directly with him. I brought this issue up multiple times.

To show I am comptent and knew how to do this assignment, I have attached the sample I am requesting the professor grade.

If someone will tell her this is part of my disability and diagnostic criteria I would greatly appreciate it. I sent links before to show this. Also, the DSM 5 directly states that food intake is essential to diagnosis. The professor used the same words... tracking food intake.

This assignment 0 is a two letter grade change for me. Right now I sit at a 79.3 and even if she gave me 12/20 points on this assignment I would have an A. Furthermore, in the first instance I submitted 95% of the assignment.

Also, I was a bit confused, she said "Where are your food entries? Please go back and read the instructions and look at the example provided" which led me to believe I would be allowed to submit this for regrading... why would one go back and look at the instructions/examples if the professor is not willing to regrade?

Please lets resolve this. I would much rather end on a high note. This is my last class.

**From:** Michael <michaelsmoates@gmail.com>
**Sent:** Sunday, August 22, 2021 12:54 PM

**To:** Michael Moates <MMOATES@my.lonestar.edu>
**Subject:** Fwd: Request


---------- Forwarded message ----------
From: **Copeland, Beverly** <Beverly.M.Copeland@lonestar.edu>
Date: Sun, Aug 22, 2021 at 11:40 AM
Subject: Re: Request
To: Michael Moates <michaelsmoates@gmail.com>


D
Dear Michael,

I, at this moment, acknowledge your email and my phone conversation with you
on Saturday, August 21st. In that conversation, you inquired why you had gotten
zero on your project.
You mentioned that you had an eating disorder and did not feel comfortable
recording the foods eaten. You indicated that you communicated with Disability
Services about the project and that they were to have reached out to me about
your accommodations. I informed you that I had not received any
communications from Disability Services on your behalf.

Regarding my grade of Zero for your project:
Your project did not follow the instructions or example provided. Instructions for
the project: Complete a total food record of all foods and beverages eaten over
three days. Your intake must include three consecutive days, which should consist
of only **one** weekend day. (E.g., Thursday, Friday, Saturday or Sunday, Monday
Tuesday) Portion sizes and amounts must be a part of the recorded intake.
Calculate all calories, proteins, carbohydrates, fat, iron, calcium, fiber, sodium,
and phosphorous from daily meals and show a record of this separately for each
day. Then give an average intake of calories and the energy nutrients
(carbohydrate, fat, and Protein) eaten over the three days. You may use the USDA
website for the nutrient content of the food.  https://fdc.nal.usda.gov/.

The instructions for the project were not followed. Only the words Breakfast,
Lunch, and Dinner and the number of calories were reported, omitting the pivotal
and essential listing of food items for analysis. I cannot determine your level of
understanding of the content material, as the requirement for the project was not
met.
The project was not given for the instructor to be critical of your daily intake but
to gauge your understanding of the material and give you an insight into your
daily intake and for you to assess where you are according to recommended
standards.
In my years of teaching this course, I have seen many students benefitting from
this assignment. They can see what they are consuming, measure it against the
information they have learned from the class, and make adjustments in their
eating if necessary.

I am sorry, with not food entry, I was not able to grade your project. There was nothing to grade.

In my conversation with you, I informed you of my fair grading practice, not treating one student differently over another. I have advised you to go back to Disability Services about the communications you indicated that you've sent to them. I am willing through this medium to find a resolution if it was duly reported that accommodation should have been made for you in such a case.

I have not received any notice from Disability Services and stand ready to work with them should they determine an alternative solution for your grading is necessary.

Thanks for your understanding; I await the communications from Disability Services
Regards

---

**From:** Michael Moates <michaelsmoates@gmail.com>
**Sent:** Sunday, August 22, 2021 1:10 AM
**To:** Copeland, Beverly <Beverly.M.Copeland@lonestar.edu>
**Subject:** Request

CAUTION: This email originated from outside of Lone Star College. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dr. Copeland,

I wanted to make one final attempt and see if you would except a revision for me for grading. A couple of things I hope you will consider, I notified the college of my concerns about this project and the anxiety I faced behind it, I could've lied and made up a fake chart but I wanted to benefit from this and so I used it as an opportunity to actually put my information in. To be honest it feels like being penalized for not lying. I am competent in this area and I can show you that if you will allow me. I did all of the calculations you asked for. I was just humiliated to list the foods I eat due to my eating disorder.

Will you please allow me to submit a sample log for full grading?

I know you mentioned the late policy, what I would say to that is it's not late and I did turn in the assignment. I felt like I had a lack of direction from disability services and the college.

Sent from my iPhone

**Michael Moates, MA, QMHP-T, RBT, CPI**
*Doctor of Education Student | Fielding Graduate University*
*Senior Member, Civil Air Patrol, US Air Force Auxiliary*
*State of Texas Commissioned Notary Public*
*(817) 999-7534 | mmoates@email.fielding.edu*

*"Yesterday is not ours to recover but tomorrow is ours to win or lose." -*
*President Lyndon B. Johnson*

"When I was a baby child, good and bad was just a game, many years and
many triumphs, they proved to me they not the same"


--
**Michael Moates, RBT, CPI**
Doctor of Education Student | Fielding Graduate University
Master of Arts in Interdisciplinary Studies Student | Liberty University
Senior Member, Civil Air Patrol, US Air Force Auxiliary
State of Texas Commissioned Notary Public
(817) 999-7534 | mmoates@email.fielding.edu

*"Yesterday is not ours to recover but tomorrow is ours to win or*
*lose." - President Lyndon B. Johnson*

"When I was a baby child, good and bad was just a game, many years and
many triumphs, they proved to me they not the same"



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

1999 BRYAN ST., SUITE 1620
DALLAS, TX 75201-6810

REGION VI
ARKANSAS
LOUISIANA
MISSISSIPPI
TEXAS

December 13, 2016

Ref: OCR Docket # 06162239

Dr. Stephen C. Head, Chancellor
Lone Star College System
5000 Research Forest Drive
The Woodlands, TX

Dear Dr. Head:

This letter is to notify you that the U.S. Department of Education (Department), Office for Civil Rights (OCR), Dallas Office, received a complaint filed against Lone Star College System (LSCS), The Woodlands, Texas, on June 13, 2016. The Complainant alleged that the LSCS discriminated against him on the basis of disability during the 2016 Spring Semester by failing to timely implement his academic adjustments.

OCR is responsible for determining whether entities that receive or benefit from federal financial assistance from the Department, or an agency that has delegated investigative authority to the Department, are in compliance with Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. §794 (amended 1992), and its implementing regulation at 34 C.F.R. Part 104, which prohibits discrimination on the basis of disability. OCR also enforces Title II of the Americans with Disabilities Act of 1990 (Title II), 42 U.S.C. §12132, and its implementing regulation at 28 C.F.R. Part 35. Under Title II, OCR has jurisdiction over complaints alleging discrimination on the basis of disability that are filed against public entities.

LSCS is a recipient of federal financial assistance from the Department and is a public entity. Therefore, OCR has jurisdictional authority to process this complaint for resolution under Section 504 and Title II.

Because OCR has determined that it has jurisdiction, it is opening the Complainant's allegation for investigation. Please note that opening this complaint for investigation in no way implies that OCR has made a determination with regard to its merit. During the investigation, OCR is a neutral fact-finder, collecting and analyzing relevant evidence from the Complainant, the recipient, and other sources, as appropriate. OCR will ensure that its investigation is legally sufficient and is dispositive of the allegations, in accordance with the provisions of OCR's *Case Processing Manual*.
Based on the Complainant's allegation, OCR will investigate the following legal issue:

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*

> Whether LSCS failed to make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of disability, against a qualified disabled student, by failing to provide the Complainant with necessary academic adjustments and/or auxiliary aids (i.e., extended time) during the 2016 spring semester, in violation of Section 504, at 34 C.F.R. § 104.44, and Title II, at 28 C.F.R. § 35.130.

For your information, we have enclosed OCR's Complaint Processing Procedures to provide you with an overview of our complaint evaluation and resolution process. Please note that OCR can resolve complaint allegations *before* completing an investigation in two ways: the Early Complaint Resolution (ECR) process and voluntary resolution agreements.

ECR allows the parties (the Complainant and the institution that is the subject of the complaint) an opportunity to resolve the complaint allegations quickly; generally, soon after the complaint has been opened for investigation, although ECR may take place at any time during the investigative process. If both parties are willing to try this approach, and if OCR determines that ECR is appropriate, OCR will facilitate settlement discussions between the parties and work with the parties to help them understand the legal standards and possible remedies. More information about ECR may be found in the enclosed brochure.

Complaints may also be resolved before the conclusion of an investigation if the institution that is the subject of the complaint (recipient) expresses an interest in resolving the complaint. This process is voluntary and must be requested by the recipient. The Office Director or designee must determine that it is appropriate to resolve the complaint during the course of an investigation. If the voluntary resolution process has been determined appropriate, OCR will immediately notify the Complainant of the recipient's interest in resolving the complaint and will keep the Complainant informed throughout all stages of this resolution process. The resolution agreement is negotiated between OCR and the recipient. The provisions of the resolution agreement will be aligned with the complaint allegations or the information obtained during the investigation, and will be consistent with applicable regulations, and a copy of the signed resolution agreement will be included with the resolution letter. OCR will then monitor the implementation of the resolution agreement. Please let me know if you are interested in resolving the complaint prior to the conclusion of the investigation, either through the ECR process or by entering into a voluntary resolution agreement.

Section 100.6(c) of Title 34 of the Code of Federal Regulations stipulates that each recipient of Federal financial assistance shall permit access to pertinent sources of information to responsible Department officials or designees. Pursuant to 34 C.F.R. § 100.6(c) and 34 C.F.R. § 99.31(a)(3)(iii), of the regulations implementing the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, OCR may review personally identifiable records without regard to considerations of privacy or

Page 3 – Dr. Stephen C. Head, Chancellor

confidentiality.  Enclosed is an initial data request.  <u>Please provide the requested information to OCR within 15 calendar days of the date of this letter</u>.  Please be advised that this request does not preclude OCR from requesting additional information during the course of the complaint resolution process.  After reviewing all information received, OCR will determine whether an on-site investigation is warranted.  If so, you will be contacted to arrange a mutually convenient date.

Please be advised that LSCS may not harass, coerce, intimidate, or discriminate against any individual because he or she has filed a complaint or participated in the complaint resolution process.  If this happens, the Complainant may file another complaint alleging such treatment.

Under the Freedom of Information Act, it may be necessary to release this document and related correspondence and records upon request.  In the event that OCR receives such a request, we will seek to protect, to the extent provided by law, personally identifiable information, which, if released, could reasonably be expected to constitute an unwarranted invasion of personal privacy.

I am the investigator who has been assigned to investigate this complaint.  If you have questions, you may contact me at (214) 661-9607 (Tamara.Williams@ed.gov).  You may also contact my supervisor, Lori Bringas, at (214) 661-9638 (Lori.Bringas@ed.gov).  Thank you for your anticipated cooperation.

Sincerely,

Tamara L. Williams
Investigator/Equal Opportunity Specialist
Dallas Office

Enclosures

U.S. DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS (OCR)
INITIAL DATA REQUEST

Lone Star College System (LSCS)
OCR Case No. 06162239

To help facilitate resolution of the above-referenced complaint, the Office for Civil Rights (OCR) requests that LSCS provide the following information within **15 calendar days** of the date of this letter. For purposes of this investigation, the Complainant is identified as <u>Michael Moates,</u> a current student at LSCS.

1. A narrative response to the complainant's allegation that the LSCS failed to timely provide the Complainant with necessary academic adjustments and/or auxiliary aids during the 2016 Spring Semester. Please also include all supporting documentation.

2. The name, address, and telephone number of the individual designated by the LSCS to communicate with OCR regarding the investigation of this complaint.

3. A copy of the Complainant's educational records for the 2016 spring semester.

4. Copies of any documentation of communications between the Complainant and LSCS (including for example, correspondence, records of telephone conversations, emails, and notes of conferences or meetings) related to the Complainant's academic adjustments and auxiliary aids and services (not previously provided). If no written documentation exists, please provide a narrative of any discussions regarding these issues.

5. A copy of the syllabi and any and all relevant information issued by the professors for the classes taken by the Complainant during the 2016 spring semester.

6. Any other information LSCS can provide to OCR to assist us in resolving the allegation in this complaint.

If you have any questions concerning this Data Request, please contact Tamara Williams at 214-661-9607, or via email at <u>tamara.williams@ed.gov.</u>